Chief Justice Robertson
delivered the opinion of the Court
Holbert having, at the April term, 1820, of the Greenup Circuit Court,obtained a judgment against Montgomery’s administrators for eleven hundred and twenty-two dollars seventy-six cents damages, and also his costs, to be levied of assets which had come to their hands—at the next succeeding July term of the same Court, the following agreement being filed, the Court made thereon, the following order:—
“ Henry Holbert vs. Wm. Montgomery's Adm'rs.”
“It is agreed that the judgment herein given at the “last term, shall be set aside, and this cause shall be re-instated oh the docket, and a new trial had, at the “present term, on the following terms — The defendants “admit the plaintiff’s account as proved at the last term, “as found by the jury, and the plaintiff agrees that the “plea of fully administered shall be tried, and any other “matter which could be legally pleaded may be given w in evidence under the general issue of plene administravit.
“J. R. Chitwood, Atty, for pltf.
“Jno. M. McConnell, p. deft.”
“At a Circuit Court continued and held for Greenup, “county, at the court house in the town of Greenups v burgh, on the 31st day of July, 1820—
Scire facias to revive the judg’t; the agreement & order pleaded in bar; replication, that the agreement was made without the authority or sanction of the plt’f, and the order in his absence, and without his authority, & without notice to him: demurrer, and questions upon the record and pleadings.
The right of a court to control a judg’t, without the mutual consent of the parties, ceases at the end of the term at which it is rendered: but if they both appear and consent, it may be set aside at any time
Held, that the order supra must be taken as conclusive evidence that, the parties appeared in person, (at a term subsequent to that at which the judg't was rendered,) and consented to a new trial, upon the terms filed by their counsel, & it was therefore, competent for the court to grant it. But, if the order should be understood as stating that they appeared by attorneys, its effects will be the same.
*12 “ By consent of the parties, it is ordered that the judgment heretofore entered in this case, be set aside, and “ this suit reinstated on the docket, and a new trial granted, as per agreement of the parties by their attorneys “filed.”
The record of the case now before us, docs not show that any thing further occurred in the cause until October, 1833, when Holbert caused a scire facias to be issued for reviving the judgment rendered in April, 1820. The administrators exhibited the foregoing agreement and judicial order, and pleaded the latter in bar of the scire facias. The plaintiff replied that, the agreement was made without his authority or sanction, and that the order for a new trial was made in his absence, and without any appearance by him, or by his authority, and with, out any notice to him. The defendants demurred to the replication, and the Court sustained the demurrer; and thereupon, the plaintiff failing to plead over, judgment was rendered in bar o.f the scire facias.
The replication was undoubtedly good, unless the plaintiff was concluded by the legal import of the record; and he was not so concluded, unless the record should be deemed inconsistent with the facts averred in his replication. This latter enquiry, therefore, is the only matter now presented for the consideration of this Court.
Although the Circuit Court, without the consent of the parties, had no control over the judgment after the expiration of the term at which it was rendered, nevertheless, its power to set aside the judgment and award a new trial upon the appearance and consent of the parties, at any time, was, as we think, unquestionable. If then, the record import that the parties appeared in Court at the July term, 1820, the order then made, was not only proper, but effectually annulled the judgment of the term immediately preceding. The legal effect of the record, in this respect, is, therefore, the single point to be considered.
And upon full consideration, we have concluded that? the record should be deemed conclusive evidence of such an appearance, as gave the Circuit Judge jurisdiction, *13 for the purpose of awarding a new trial, on the terms prescribed in the agreement filed.
The common law authority of an attorney ceases upon the rendition of the final judgment, except that, for a year and a day, he may enforce it. He cannot release damages; nor prosecute a scire facias without a new warrant; nor compromise his client’s debt; nor discharge a def’t from execution, without actual satisfaction; nor enter a retraxit. But—
An attorney may confess judgment even before service of process; or may enter a remittitur damna before judg’t; or may submit a case to arbitration; or may bring a new suit after a nonsuit,
First—Such an analysis of the language of the order for a new trial, as seems to be proper and consistent with all the words, and not inconsistent with any of them, leads to the deduction that the Circuit Court intended to show, by its record, that the parties appeared in their proper persons, and consented to the new trial on the terms of the agreement, made and filed by their counsel.
Second—But if the record should be so interpreted as to allow the inference that the only appearance was by Chitwood and McConnell, or others, as the attorneys of the parties, still we are of the opinion that the order for a new trial was valid and judicial.
According to the common law, the authority of the attorneys who represented the parties m the original suit if of the ordinary kind, as we must presume it was, terminated when the first judgment was rendered, with the exception only of the implied right of the attorney of the plaintiff to enforce the judgment for a year and a day. 1 Tidd’s Practice 64, Second Institute, 378; Jackson ex. dem. McCrea vs. Bartlet, 8 Johnsons Rep. 361; Kellog vs. Gilbert, 10, Ib. 220; Crary & Morgan vs. Turner, 6, Ib. 53; Richardson vs. Talbot, 2 Bibb's Reports 282. Lord Raym'd. 1048, 1252; 2 Bos. & Pul. 357; Com. Dig. title, Attorney, B. 10.
An attorney cannot release damages; 1 Salk. 89; nor prosecute a scire facias to judgment without a new warrant. Salk, supra; Gennigal vs. Smith et. al. 6 Johnson's Reports 108; Cro. Eliz. 177; Lord Ray, 1048; 1 Taunton 46; Atwood vs. Burr; Lord Ray. 1252. Nor compromise his client’s debt. Halker et. al. vs. Parker, 7 Cranch, 436. Nor discharge a defendant from execution, without actual satisfaction. 9 Johnson, supra, 361; 10 Ib. supra, 222. Nor enter a retraxit. 6 Mod. 82; Salk, supra; Beecher's case, 8 Coke’s Reports 58, and Cro. Jas. 211.
But, according to the common law, an attorney may confess a judgment, even before the service of process—Denton et. al. vs. Noyes, 6 Johnson, 296; and the cases therein cited, and Talbot vs. McGee et. al. 4 Monroe, 375— *14 may enter a remittitur damn a before judgment—Lamb vs. Williams, Salk., supra—may submit a cause to arbitration.—Halker et al vs. Parker, supra, and 4 Monroe, supra; and may bring a new suit after a former one, for the same cause had been non prossed. Scott vs. Elmendorf, 12 Johnson, 312.
After the rendition of a final judg’t, the attorneys by whom the suit was prosecuted and defended, have no authority resulting from their original employment, to consent to set it aside, or agree to a new trial; but a special power for that purpose, or a general power in relation to the judgment, may be conferred upon them, or upon other attorneys; and any consent or agreement, given or made, by an atto. duly authorized, in such case, will be effectually binding upon the client.
Whilst the foregoing doctrines leave no ground to doubt that the general authority possessed by the attorneys in the original suit, prior to the first judgment, did not vest in them power, either to bind the parties by the agreement which has been recited, or to consent, for them, to a now trial, which virtually discharged the judgment without satisfaction — yet the same cases and principles tend, in our judgment, to show that a new authority to the same attorneys, or an original general warrant of attorney to any others of the same Court? might have empowered them to bind their clients, by a judicial order for a new trial, made on the consent merely of their attorneys, though vested only with general power respecting the original judgment which was thus set aside. If, in consequence of a necessarily implied authority, an attorney may, by his pleadings, or admissions, or reference to arbitration, or confession of judgment, or remittitur, and many other acts, and even delinquencies, bind bis client, without his knowledge and against his will, why may nota party to a judgment be equally, and even more justly and inextricably bound by the consent of his attorney to a new trial — and especially, as an attorney, having authority to consent to a new trial, must, as already suggested, have a new warrant, which, from the nature of the case, must be presumed to have been given for that special purpose, and as, also, a new trial only subjects the parties to another and perhaps more satisfactory investigation, and may, as was probably the fact in this case, relieve the party holding an erroneous or unjust judgment from the expense of a reversal?
As the parties, in their proper persons, might have gone into court and consented to a new trial, or might out of court, have made an agreement effectually waiving or defeating the judgment, at any time, whether bef *15 ore or sifter the expiration of the term at which it was rendered, we can perceive no satisfactory reason why the same thing might not. have been done with equal effect by a delegated authority.
Under the ancient com. law, a person cited to appear, could not appear by attorney; though he might have one to represent him after he had appeared. Afterwards, an appearance by atto. in any civil suit, was authorized by statute, and then a letter of atto. made part of the record was essential, as the judg’t might be reversed for want of it; but that was changed by the statutes of jeofails, and the practice of admitting attorneys without written authority has long prevailed; and now, whenever a responsible attorney of a court, appears as the representative of a party, he is received as such, without any special enquiry as to his authority. And, it has been decided in England and in several of the U. States, that want of authority in the attorney who appeared, is not sufficient cause for setting aside judg’t, if the attorney is able to indemnify the injured party.
And the only remaining enquiry is, therefore, whether, if the parties did not personally appear in Court, the record imports that they appeared by attorneys, vested with authority to do all that was done, respecting the new trial.
By the ancient common law, a party cited to appear in court, could not appear by attorney; but after a personal appearance, he might, with the consent of the Court, be represented by an attorney. Belcher's case supra; Com. Digest. Atty. B. 4.
But now, under the sanction of various statutes, any suitor in a civil case may appear by attorney, even without a citation. Com. Dig. Atty. B. 5.
And though, by the modern common law, a written warrant of attorney was required to be filed, yet the statutes of jeofails cured the want of one after verdict; and the universal practice of admitting attorneys without a warrant in writing has long prevailed. A parol authority is now deemed sufficient. Com. Dig. Att. B. 7. Trusting to the responsibilities of attorneys, as officers of Court, acting under the solemn sanction of an oath, Courts have long and authoritatively adopted the convenient practice of recognizing, without scrutiny as to express authority, any sufficient and responsible attorney who claims to be the authorized representative of a party; and it was decided in 1 Salk. 88, and in other cases in England, and has been re-affirmed in the case of Denton et. al. vs. Noyes, in 6 Johnson, already referred to, that want of authority is not alone sufficient, cause for setting aside a judgment, if the attorney, who appeared and acted, be able to indemnify the injured party. Also, the Supreme Court of Pennsylvania decided, in the case of McCullough vs. Guefner, 1 Binney 214, that, if an attorney had been permitted to appear for a defendant before -citation, the party for whom he thus acted could not reverse the judgment on the ground, merely, that no authority was, in fact, given by him. And, in *16 Rainbolt vs. Alberte, Ib. 469, the same Court decided that an attorney, recognized by the Court as the authorized representative, of a defendant in whose favor a nonsuit had been adjudged, two years before, having set aside the nonsuit and reinstated the cause, his act should bind the defendant, even though no such authority had, in fact, been delegated to him.
Judicial acts and records must be accredited, and, as no court should permit any one who is not duly authorized, to appear as the alto, of a suitor, when the record states, that a party appeared by his attorney, the judicial presumption is, that the court decided, that the authority was sufficient. And, query—whether when such a statement is made in a record, in consequence of the appearance of a pretended attorney, who had no authority, the injured party can, in any way, escape the effect of the judg’t, or can obtain any other redress than an action against the atto. will afford. But—
Held, where the record states, that, “by consent of the parties,” a judg't of a former term is set aside, and a new trial granted, “as per agreement of the parties by their attorneys filed" - the defendant may plead and rely upon the order as a bar to a scire facias to revive the original judg’t, and the plt’f will be estopped by the record, from replying, that the order was made without his consent, authority, or sanction.
*16 The principle of these and many other cases which might be added to them, is the necessity of accrediting judicial acts and records. As a Court should be fully satisfied, that any person claiming to represent another, has proper authority before he should be permitted to act as his attorney; therefore, whenever the record of a case shows, that there had been an appearance by attorney, the necessary judicial implication must be, that the Court had decided that the person entering the appearance was the authorized attorney of the other.
Such, then, being the legal import of such a record, is it consistent with analogy or public policy, that the effect of the record should be defeated by extraneous parol testimony, directly impeaching the verity of what it either expressly affirms or necessarily implies? If such testimony should be generally admissible, for such a purpose, might not all judgments be subjected to an ordeal unusual, unsafe, and inconsistent with the true nature and proper efficacy of judicial records? And would it not be better, as a general rule; to leave an injured party to bis admitted legal remedy against the pragmatical attorney who had, without authority, interfered with his rights, and in whose favor the record would not, in such a case, be conclusive evidence?
We need not decide whether this last should always be the only remedy; nor whether, if the officious attorney be insolvent, or otherwise irresponsible, the record itself may be set aside, as intimated in some of the foregoing cases. Nor do we intend to be understood as recognizing, in all respects, the perfect authority or ac curacy of all the judicial decisions and suggestions to which we have referred in illustration of the general principle which we have been endeavoring to establish. It is enough for this case, to maintain the general propo *17 sitions: first — that the parties might have consented to a new trial at the time it was. ordered; second — that they might have delegated to their attorneys, plenary authority to do so; third — that whether those claiming to act and, in fact, acting as their attorneys in that particular, had sufficient authority, was a question which the Circuit Court had a right to decide, ought to have decided, and should be presumed, prima facie at least, to have decided correctly; and fourth — that the Court having thus decided, its decision should not be incidentally impeached by extrinsic testimony, tending to show only that the record is false in regard to a material fact positively asserted, or necessarily implied by it.
In reference to this last proposition, we know there has been some diversity of opinion, and, of course, some little contrariety of practice. But it seems to us, that reason, policy, and a very decisive preponderance of adjudged cases have conclusively settled it as we have stated it, so far as it. could be settled by such authority.
If it should be said, that there was no lis pendens, and that, therefore, the Circuit Court had ho jurisdiction to determine whether the attorneys had authority to act — we answer, first — that, for the purpose of execution, both parties were still constructively before the Court, and that, therefore, the Court, without their personal appearance, might have permitted an appearance by their authorized attorneys, for any purpose concerning the enforcement of the judgment; and second — that, as a person may appear as a defendant, by attorney, before any personal appearance; or even before citation, we cannot perceive any good and consistent reason why there may not be a similar appearance by a party as plaintiff, without formally and in proper person, instituting a suit or a proceeding in the nature of a litigation. Indeed, plaintiffs generally appear by their attorneys only; and in most cases the only evidence before the Court, of authority for instituting or prosecuting a suit, is the fact, that an officer of the Court acts as attorney for the plaintiff. The question in every case is only whether the attorney has authority.
As, then, the original judgment might still have been *18 the subject of further litigation, and as the parties to it might have gone personally into Court, and set it aside at any time, we have concluded that, either and both of them might have appeared, for that purpose by attorney in the first instance, and alone; and that the Court had a judicial right to determine whether they did so or not; and that, having decided that they did, the decision should not now, and in the mode proposed, be set aside by parole evidence of repugnant facts, easily fabricated, and which it may now be the urgent interest of one of the parties to fabricate. Consequently, there being no allegation of fraud, or of any other fact than the alleged falsehood of the record, or erroneousness of the decision by the Circuit Court, us to the appearance by attorney, the replication is deemed insufficient, even if the record should allow any other interpretation than that of a persona] appearance by the parties. And this conclusion seems but the more reasonable and just in this case, because the plaintiff, not only appears to have acquiesced, for thirteen years, in the order for a new trial; but has not even suggested what was the result of the second trial, or whether he ever had one.
Judgment affirmed.