Smith's heirs vs. Dixon, Barrett, et al.

CASE 14—PETITION EQUITY—JUNE 26.

## Smith's heirs vs. Dixon, Barrett, et al.

APPEAL FROM HENDERSON CIRCUIT COURT.

An attorney at law, under his general authority as such, independent of any special authority conferred upon him by his client, has no power to compromise the suit, or to surrender the claim of his client to the defendants in the action and dismiss his petition.

See the opinion for a review of the authorities upon the question, *supra*. The extent to which the authorities go is, that admissions made by an attorney of record in court, in a case then depending, while conducting and managing it, and preparatory to the trial or decision of the case, are binding upon the client.

In an action by a client to set aside a judgment against him, rendered without his authority upon a compromise of his claim by his attorney at law, his right of recovery in the action in which such judgment was rendered will not be inquired into; but the judgment should be set aside, the suit be again placed upon the docket, and the cause proceed in the same manner as if such judgment had never been rendered.

See the opinion in this case for a reference to numerous authorities relating to the extent of the authority of an attorney at law, under his employment as such.

JAS. HARLAN, for appellants.

GEO. H. YEAMAN, on same side, cited *Civil Code, secs.* 586, 587; 13 *John. N. Y.*, 308; 7 *Cranch*, 436; *Civil Code, secs.* 583, 582, 581; 2 *J. J. Mar.*, 163; 5 *Dana*, 11; *Bacon's Ab.*, "*Attorney;*" *Bouvier's Dic.*, "*Retraxit;*" 4 *Mon.*, 376; 6 *John.*, 296; *Dunlap's Paley's Agency*, 191 *to* 193; *Story on Agency*, 96 *to* 103; 1 *Blanford*, 252; 8 *Wendell*, 495; 11 *John.*, 465; 5 *Ib.*, 58; 6 *Mon.*, 82; 7 *Mon.*, 93; 1 *Desaus.*, 469; 5 *Randolph*, 639; 1 *Hill*, 184; 14 *Serg. and Rawle*, 307; 1 *Penn. Rep.*, 264; 4 *Dana*, 474; 10 *John.*, 220; 21 *Wend.*, 263; 7 *Cranch*, 436.

DALLAM and CROCKETT, for appellees, cited 5 *Dana*, 13; 8 *Dana*, 12.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT: (Judge Bullitt did not sit in this case.)

In 1855 Moses F. Smith engaged the services of John W. Crockett, an attorney at law practicing in the Henderson circuit court, to prosecute a suit for him in said court against Archibald Dixon and A. B. Barrett, for the recovery of a large tract of land on the Ohio river in Henderson county, then

in their possession, and estimated to be worth $45,000 or $50,000.

On the 13th of October, 1855, a petition in equity, skillfully drawn by said Crockett, and sworn to by *A. J. Good*, agent for Moses F. Smith, was filed in the office of the clerk of the Henderson circuit court, against Dixon and Barrett for said land, containing a statement of facts sufficient to authorize a recovery. Upon the same day upon which the petition was filed, summonses were issued, and, on the 15th day of October, 1855, were executed. The cause was continued on the docket until the July term, 1858, of the Henderson circuit court, without any answer having been filed by either of the defendants, at which term of said court the defendants compromised the case with Crockett, the attorney, and in consideration of $300 paid to him by Dixon, a judgment, purporting on its face to be by consent of the parties, was rendered in favor of Dixon, by which Smith surrendered to him all right, title and claim which he had to the one hundred acres of land claimed by him in Dixon's possession ; that Dixon should be forever quieted in his title to the said land against the said Smith, and all claiming by, through, and under him, and, as to said Dixon, the plaintiff's petition was dismissed.

At the same term of the court, and a few days afterwards, in consideration of $1,000, five hundred of which were paid in hand to Crockett, and a note executed for $500, a judgment purporting to be by consent of the parties, was rendered in favor of A. B. Barrett, surrendering to him all of Smith's right, title and claim to the land in his possession claimed by Smith ; that he was to be forever quieted in his possession and title to said land against said Smith and all persons claiming from, by or through him, that plaintiff's petition be dismissed, "and defendant recover his costs, &c."

On the 10th of November, 1858, Moses Smith filed his petition in equity in the Henderson circuit court against said Dixon, Barrett, Crockett, and J. W. Rice, to nullify and set aside said judgments, charging that they were obtained by the fraudulent combination of Dixon, Barrett, and Crockett, to defraud him out of a tract of land worth $45,000 or $50,000, of which

he was the rightful owner ; that he had engaged the services of Crockett and Rice, as his attorneys at law, to prosecute said suit against said Barrett and Dixon, to recover said land for him, and that said Crockett had, in his absence, without any authority from him, and without his knowledge or consent, or the knowledge or consent of his agent who resided in the city of Henderson, and was known to be his agent by said Crockett, compromised his suit, and surrendered up his claim to said land to the defendants in said action, against his will, and caused his said suit to be dismissed, in consideration of a certain amount paid to him, the said Crockett, by Dixon and Barrett ; that he had never approved or assented to said compromise, but denounced it as a fraud upon his rights as soon as he was informed of it ; that he had received no part of the money paid to Crockett, or secured to be paid, and that Crockett was insolvent.

Dixon, Barrett and Crockett filed separate answers to said petition, in which they severally deny that Smith had any title to said land, or any chance to recover the same ; but insist that Dixon and Barrett were the *bona fide* owners of the parcels of land of which they were respectively possessed, and that the compromise was made with Crockett to buy their peace and to get rid of a litigous and troublesome adversary, and allege that Crockett had full power and authority to make the compromise and to cause the judgments to be rendered in their favor ; they deny all fraud, but admit that Smith was not present when the arrangements were made, nor do they controvert the allegation that Smith was not in court when the judgments were entered. Dixon and Barrett do not respond to the charge that Crockett was insolvent, but Crockett denies his insolvency.

Crockett, in his answer, states, that about the time the deposition of J. H. Smith was taken, Dixon had a conversation with him, in which he said he had a clear and perfect title to the land for which Smith had sued him, but that his health was not good, and, for that and other reasons which he assigned, proposed to give him $300 to compromise the suit to the extent that his interests were involved; this proposition he says he communicated to Smith and Smith left the matter to his dis-

cretion; that, during the July term, 1858, of the Henderson circuit court, Dixon renewed the proposition to him, he accepted it, and Dixon paid him the money, and then asked him upon what terms he would compromise with Barrett; he replied that he would compromise with Barrett for $1,000; Dixon then said that he would communicate the proposition to John H. Barrett, the brother and agent of the defendant, A. B. Barrett, (who was then in England,) and inform him in a few days whether it would be accepted; this proposition was accepted by Barrett's agent, and $500 paid to Crockett, and a note executed for $500, payable in the Farmers Bank in the city of Henderson at some future period.

But these allegations of Crockett are not sustained by any competent evidence in the record, although an affidavit of the defendant, Crockett, containing the same allegations, was filed, and adopted as part of Barrett's answer.  That affidavit, however, was not regarded as evidence in the court below, and cannot be so regarded here.  Exceptions were filed by appellants' counsel, in the circuit court, to that, and to Nelson's affidavit, and, although that court overruled said exceptions, it is certified in the bill of exceptions that said affidavits were only read as part of the pleadings, and not treated or considered as evidence in the case.  Exceptions however were taken to the opinion of the court below overruling appellants' exceptions to said affidavits; but, as they were not read as *evidence*, and appellants have not therefore been prejudiced by them, we pass on to the consideration of a more serious and difficult question, which is: Had Crockett, as Smith's attorney at law, under his general authority as such, independent of any special authority conferred upon him by Smith, the power to compromise the suit, to surrender the claim of his client to the defendants in the action, and dismiss his petition?  Or, in other words, are the judgments entered in the case of Moses F. Smith against Arch. Dixon and A. B. Barrett, by an agreement with John W. Crockett, the attorney at law of the plaintiff, binding on appellants?

The authorities on this point have been examined with care. The court has been referred to *Holbert vs. Montgomery's admr's.*,

(5 *Dana*, 12,) and *Story vs. Hawkins, et al.*, (8 *Dana*, 13,) by appellees' counsel, to sustain the judgment. A brief examination of them will show, however, that they are not analagous cases.

Holbert, in the first named case, had recovered a judgment at the April term, 1820, of the Greenup circuit court for a sum of money against Montgomery's administrators. At the next July term of said court an order was made, reciting to be made by consent of the parties, that the judgment of the preceding term be set aside, and the suit reinstated on the docket and a new trial granted. In October, 1833, Holbert sued out a *scire facias*, to revive the judgment of April, 1820. Montgomery's administrators exhibited the writing signed by the attorneys of both the parties, and the judicial order above referred to, and *pleaded* the latter in bar of said *scire facias*. Holbert replied that the said agreement was made without his authority or sanction, and the order for a new trial was made in his absence, without notice to him, and was unauthorized by him. The defendants demurred to the replication, the court sustained the demurrer, and, the plaintiff failing to plead over, judgment was rendered in bar of the *scire facias*, which judgment was affirmed by this court.

After enumerating many acts done by an attorney at law which according to the common law would be binding upon the client, and others which would not be, and citing a number of authorities, the court came to the conclusion, in that case, that the general authority possessed by the attorneys in the original suit prior to the first judgment *did not vest in them power* to bind the parties by their agreement, or to consent, for them, to a new trial; but before the attorney at law could bind his client by his consent for a new trial, "he must have a new warrant, which, from the nature of the case, the court said must be presumed to have been given for that special purpose."

The court said in that case, too, that "such an analysis of the language of the order for a new trial, as seems to be proper and consistent with all the words, and not inconsistent with any of them, leads to the deduction that the circuit court intended to show by its record that the parties appeared in their

Smith's heirs vs. Dixon, Barrett, et al.

proper persons and consented to the new trial on the terms of the agreement made and filed by their counsel;" and although the case was not affirmed alone upon *this* construction given to that order, yet that, together with the fact that the plaintiff had acquiesced for thirteen years in the order for a new trial, and failed to show whether there ever had been a second trial, or what the result of it was if there had been one, furnished very satisfactory if not conclusive reasons for affirming the judgment.

But, in the case under consideration, it is charged that the attorney, who made the agreement and consented to the judgments, is insolvent and irresponsible, which is not denied by two of the defendants, and, although denied by Crockett, it is proved by one witness; and the court in the case, *supra*, say that if the attorney be insolvent, or otherwise irresponsible, they do not decide that the record itself may not be set aside.

This case, then, as we understand it, fails to establish the doctrine contended for by appellees.

In the case of *Story vs. Hawkins*, (8 *Dana*, 13,) this court decided that in "a case *depending* and *in progress* it was competent for the parties by their *counsel* to agree upon the terms of a decree and division of the proceeds; and their agreement entered on record is binding upon their clients."

The consent order in the last named case was within the direct duty of the attorney, the case was *depending* and in progress, and the order facilitated the trial, and was made in court.

Admissions made by attorneys in court, in conducting, managing, and preparing cases for trial, are binding upon clients. (2 *Starkie*, 136, *and notes*.) Attorney's agreement to refer matters of account in dispute to an accountant, and to confirm the report, will bind the client. (*Smith vs. Bossard*, 2 *McC. Ch.*, 406.) And in *Somers vs. Balabrega*, (1 *Dall.*, 164,) it was ruled that an agreement by the attorney to refer the suit to arbitration was binding upon the client.

The extent to which the foregoing authorities go, as we understand them, is, that admissions made by an attorney of record in court, in a case then depending, while conducting and

managing it, and preparatory to the trial or decision of the case, are binding upon the client.

In the case of *Holbert vs. Montgomery's admr's, supra,* it is said that an attorney cannot release damages, nor prosecute a *scire facias* to judgment without a new warrant, nor compromise his client's debt.

In the case of *Harrow et al. vs. Farrow's heirs,* (7 *B. Mon.,* 126,) it was held by this court, that an attorney who had been employed by one of a number of lessors to prosecute a suit against the defendants for a large tract of land, with an authority to compromise the same, and an agreement that the attorney was to pay all costs and to have one-half of the land recovered, had no power to release a judgment for five-sixths of 120 acres of land embraced in the tract for which the suit was brought, and recovered by the suit, "nor to chaffer with the opposite party, and receive money or any other thing in satisfaction of a judgment for land. Though he remains the attorney while the judgment may be executed without new proceedings under his warrant to sue, such continuance of his power is for the enforcement of the judgment, and not for its release or extinguishment. Nor can it make any difference, or add any superior sanctity to that arrangement, *that it was entered of record in open court.*"

In *Herbert vs. Alexander,* (2 *Call,,* 420,) it was held that an attorney at law only represents the plaintiff or defendant *in court* to do such acts as the party, if in court, might do himself; but he had no right to enter into private or executory contracts.

In *Davidson vs. Rozier,* (23 *Mo. Reports,* 388,) it was held that an attorney at law, as such, is authorized to do those things only which pertain to the conducting of the suit; he has a right to enter into a reference, but no right to make a compromise—and a number of cases are cited to the point.

In the supreme court of Pennsylvania it was held, that an attorney upon the record is only authorized to do such things as pertain to the conducting of the suit; and, after referring to Chief Justice Marshall's opinion in *Holker vs. Parker,* (7 *Cranch,* 452,) the court proceeds to say: But here the object of the plaintiff's suit, which was for the recovery of money,

was entirely defeated by an agreement to take land instead of money; and that it cannot be conceived how the authority to make such a compromise can be deduced from the general power of an attorney at law.

By the supreme court of Vermont it was decided, that the duty of an attorney at law is confined to the prosecution of the suit, and the incidents properly connected therewith; but he has no power to compromise, and discharge his client's cause of action. (*Vail vs. Jackson's administrator*, 15 *Ver. Rep.*, 314.)

In *Derwort and wife vs. Loomer*, where the attorney at law, who had been engaged by appellants to prosecute their action against appellee, afterwards compromised his clients' suit, and, for $350 paid to him by appellee, executed a release, which was relied upon as a bar to the further prosecution of the action because, as was contended, the attorney at law as such had the power to make the settlement and bind his clients—the supreme court of Connecticut ruled otherwise, and held, that an attorney is the representative of his client in court, with authority to commence and conduct his cause to final judgment and execution, and to do whatever is usual and necessary to bring about that end, through all the forms and stages of legal proceedings; and there are cases in which it has been decided that he may go beyond this, as, if the execution has been returned unsatisfied, he may proceed to collect the debt by instituting a new suit upon the judgment. But he cannot receive a part of the judgment and discharge the debtor, nor can he receive any thing in payment but the money, not even the note of the defendant for the full amount of the debt; and much less can he compromise the action, or the claim of his client before judgment, for what may seem satisfactory to himself.

The general question of the authority of an attorney has often been discussed in courts of justice; but it has not been held in any of them that an attorney, who is clothed with no other authority than what is incident to his retainer, can compromise and discharge his client's claim. (1 *vol. Amer. Law*

*Reg.*, 479.)   To the same point is the case of *Fitch vs. Scott*, (3 *Howard Miss. Rep.*, 317.)

We have been referred to no case which militates against the ruling in the foregoing cases, while many others might be cited which fully sustain them.

As, then, it is not shown that the appellee Crockett's authority extended farther than to prosecute the suit as an attorney at law, and as there is no proof that Smith was present, or assented to the arrangement at the time it was made or afterwards, we are constrained to decide that the said judgments rendered in the case—the one in favor of A. Dixon, and the other in favor of A. B. Barrett—were unauthorized and should be set aside.

A different conclusion cannot be reached, (as we have seen,) without infringing upon the well settled rules of law, and sanctioning a dangerous power—too dangerous to be allowed by implication—and the refusal by the courts to sanction its exercise may in some degree have aided in establishing for the profession generally that character for integrity and fidelity for which it has been so long distinguished.

But it is contended that appellants have not manifested a title to the land or that said judgments are prejudicial to them, and they should therefore be affirmed.

In reply to that, it is sufficient to say, that the judgments in the former case presented insuperable barriers to any recovery, and until they were removed no exhibition of title, however perfect, could be availing. This suit was brought to have the obstructions removed, so that they might be enabled to make out their title if they have any, and prosecute their original suit to a final trial.

As the main purpose in prosecuting this suit was to set aside the judgments in the former suit, and the record of the Franklin circuit court and the deposition of Swigert were not material evidence for that purpose, the rejection of them by the court below was not prejudicial to appellants. It would be premature to pass upon their competency as evidence in a different suit, and in which they as yet have not been offered.

But, for the reasons herein stated, the judgment is *reversed*, and the cause remanded, with directions that a judgment be entered in the court below setting aside and nullifying the judgment entered on the 6th of July, 1858, in favor of A. Dixon, and the judgment of the 13th of July, 1858, in favor of A. B. Barrett, in the suit of Moses F. Smith against said Dixon and Barrett, lately depending in the Henderson circuit court; that said suit be again placed upon the docket, and the heirs and representatives of Moses F. Smith, dec'd., be permitted to prosecute said suit in the same manner as if said judgments had never been rendered therein; and appellants will recover their costs in the court below as well as in this court.