Harshey v. Blackmarr.

HARSHEY v. BLACKMARR *et al.*

| 20 | 161 |
| 112 | 701 |
| 20 | 161 |
| 114 | 128 |
| 20 | 161 |
| 119 | 743 |

1. **Attorney:** AUTHORITY PRESUMED. Although an attorney cannot, without special authority, admit service of *jurisdictional process* upon his client, yet it will be presumed in all collateral proceedings, and perhaps on appeal or in error, that a regular attorney-at-law who appeared for a defendant, though not served, had authority to do so.

2. —— REMEDY. To enable a party who has been represented by an unauthorized attorney to be relieved he must negative the presumption of authority in the attorney; and ordinarily this must be done by motion or bill in equity.

3. —— DOMESTIC AND FOREIGN JUGDMENTS. The rule is well settled that in an action on a judgment the defendant may show that the attorney who entered an appearance for him was not authorized to do so. It has been held otherwise as to domestic judgments, but the soundness of the ruling is doubted.

4. —— But it is certain that a party is entitled to relief when an unjust judgment, either foreign or domestic, has been rendered against him by fraud or collusion, or by the appearance of an unauthorized attorney, if he seeks the relief by bill or motion promptly, and has been guilty of no laches.

5. —— SALE UNDER JUDGMENT RENDERED UPON FRAUDULENT APPEARANCE. When it appeared that the judgment defendant was not a resident of the State in which the action was pending; that he had no notice and no service either personal or constructive; that an answer was fraudulently procured to be filed by attorneys who had no color of authority; that a decree was rendered injurious to the rights of the defendant; and it is not made to appear that the defendant was guilty of any laches, or that the rights of other persons intervened after he received notice of the fruadulent decree and before he commenced suit to cancel all proceedings thereunder; that the attorney who made the unauthorized appearance and the party who procured the making of the same are both insolvent; and that in a sale made under the decree thus fraudulently obtained the mortgaged property was sold to innocent purchasers: *Held,*

    1. That the decree defendant was entitled to relief against the decree.

    2. That the decree and the sale made thereunder were nullities.

6. Conveyance: DESCRIPTION: POWER OF ATTORNEY. The description in a mortgage was as follows: We J. L. B. and B. his wife, sell and convey unto J. H. &c., the following described premises in Marshall county, Iowa, to wit: eighty acres of land bought of Rev. J. H. H., lying ten miles to the southward from Marshalltown, in Marshall county, Iowa, and so soon as the numbers of the above land are obtained, we agree that they shall be inserted in the deed as our own voluntary act, and the recorder of Marshall county is instructed to do the same for us." After which the description was inserted and signed by the recorder. *Held,* That the deed was equivalent to a written power of attorney to the recorder to make such addition to the description.

7. Foreclosure: TENDER: The first mortgagee in seeking to foreclose his mortgage is not bound to tender any sum in redemption of a second mortgage.

*Appeal from Marshall District Court.*

FRIDAY, APRIL 6.

POWER OF ATTORNEY-AT-LAW TO BIND CLIENT: EFFECT OF UNAUTHORIZED APPEARANCE: WHEN RELIEVED AGAINST: CONCLUSIVENESS OF JUDGMENT, &C., &C. — The questions in this case arise upon the ruling of the District Court, sustaining the demurrer of the defendants, William Parnell, John A. Campbell, and William Battin, to the petition, and dismissing it. It is, therefore, necessary here to set out the substance of the petition. The petition was filed August 7, 1865, against J. L. Blackmarr and wife (mortgagors), and the above named Parnell, Campbell, and Battin, and Thomas B. Hasty and others, to foreclose a mortgage and to set aside a prior decree in favor of Hasty, and for other relief. The petition alleges the following:

1. That Blackmarr and wife, on the 24th of *September*, 1857, made a mortgage of the land in controversy (W ½, SW ¼, 10, 83, 18) to the present plaintiff (John Harshey), to secure to him the sum of $400; that Blackmarr had a clear title of record and that plaintiff had no knowledge of any incumbrance upon the land, and caused his mortgage to be duly recorded, October 7, 1857.

2. That *afterwards*, viz.: January 6, 1858, one J. M. Holland caused to be recorded a mortgage on the same land, given by Blackmarr to him, dated *August* 10, 1857, [of date, it will be seen, prior to plaintiff's mortgage, though subsequently recorded] to secure about $400, of which the plaintiff, as he alleges, had *no notice when he received his mortgage.*

3. That Holland assigned his mortgage to the defendant,

*Thomas B. Hasty,* who, on the 20th day of October, 1859, commenced a proceeding to foreclose the same in the Marshall District Court, making Blackmarr and wife and this plaintiff (Harshey) defendants, and falsely alleging in his petition that the present plaintiff, when he received his mortgage (the one now sought to be foreclosed), had notice of the mortgage given by Blackmarr to Holland then sought to be foreclosed. The following is a literal extract from the petition in the present case:

"The plaintiff (Harshey) also avers that in the course of said proceedings on the part of said Hasty, one J. W. Hambleton appeared for the defendants, and purported to appear for all the defendants in the said cause, and such proceedings were thereupon had that a decree was rendered by the said court on the 22d of October, 1859 (two days after suit brought according to the averments), foreclosing this plaintiff of his equity in said premises, a copy of which decree is annexed as a part of the petition marked 'D' and hereinafter referred to; but this plaintiff now expressly charges and avers that he never received *any notice,* by publication or otherwise, of the said foreclosure suit by Thomas B. Hasty; that there was *no pretense of service* of any notice by publication or otherwise; that he (this plaintiff) was at that time a non-resident of the State of Iowa; that in truth and in fact, he (this plaintiff) had *no knowledge or intimation* that such suit was in progress till long after the decree had been rendered, and the sheriff's sale and deed thereunder had been made and executed."

"The plaintiff further expressly avers, that he himself made *no appearance* in any manner, nor at any time, by attorney or otherwise, in the said foreclosure suit instituted by the said Hasty; that the said J. W. Hambleton had no right or authority to appear for this plaintiff (one of the defendants in said suit); that in fact the said J. W. Hambleton did not personally pretend to appear for this

plaintiff in that suit; but in fact the *attorney for the plain-
tiff* (Thos. B. Hasty) *fraudulently designing* to foreclose this
plaintiff of the land without due process of law, wrong-
fully and falsely with his own hand *wrote the said answer
for the defendant and fraudulently pretended that this plain-
tiff consented to and directed said answer*, and falsely and
fraudulently *signed the name* of J. W. Hambleton to the
said answer of the defendant, and he (the said attorney of
Hasty) filed said answer in this court; that said Hamble-
ton was 'not present in court and did not appear for this
plaintiff, and neither said Hambleton nor any other person
*had any right, color or shadow of authority* to appear for
this plaintiff, who never knew the said attorney for Hasty,
nor the said Hambleton nor corresponded with them, and
never directly or indirectly employed any counsel in said
suit, nor did he know of the same.

"And the plaintiff expressly charges that the allega-
tions in said answer were false and prejudicial to him;
that, in fact, his mortgage was not a subsequent lien to the
Hasty mortgage, and he (this plaintiff) did not have notice,
at the time he received his mortgage, of the said Hasty
mortgage."

The petition then avers, that execution issued on the
said Hasty decree, and the land was sold thereunder, by
the sheriff, on the 8th day of November, 1859, to the
defendant, Wm. Parnell, for $409.94, and a sheriff's deed
executed to him accordingly; that Parnell subsequently
(but not naming the time nor the consideration) conveyed
his interest to other parties, who are now made defendants
in this cause; that the land was sold to Parnell *en masse*,
and not in parcels, and for half its value.

A copy of the decree in the Hasty case is, as before
stated, made part of the petition, and is as follows:

Harshey v. Blackmarr.

"THOS. B. HASTY *v.* J. L. BLACKMARR, BELINDA BLACK-MARR, his wife, and JOHN HARSHEY.

*In Marshall District Court,* *October Term,* 1859. DECREE OF COURT.

"And now, October 22, 1859, the above cause came on for hearing, and the plaintiff exhibiting his bill of complaint, and the original of the copies of the exhibits thereto appended, and also the answer of the defendant, and also his evidence of the truthfulness of his complaint, and it appearing to the court that the notice and things charged in said bill are true, and in the answer of the defendants confessed, and it appearing that the court having full and complete jurisdiction of the defendants, and the subject matter of the suit, and all the premises being seen by the court, and fully understood: the court finds, &c." Here follows a decree of foreclosure, in proper form, against the defendants above named, including the present plaintiff (John Harshey).

To this petition, Parnell, and Battin and Campbell, subsequent grantees of Parnell, demur, on the grounds, substantially, that the Hasty decree was not void; that they are innocent purchasers; that the plaintiff's remedy is against Hasty or his attorney or the said Hambleton; that the decree cannot be attacked in this mode, &c.

This demurrer being sustained, and the petition being dismissed, the plaintiff appeals. Other facts respecting one or two minor questions will be found stated in the opinion.

*Boardman & Brown* for the appellant.

1. Are the rights of the plaintiff concluded as against the defendants by the decree rendered by the District Court in the case of Thomas B. Hasty against J. L. Blackmarr and wife, and plaintiff?

This court has decided in several cases that where a judgment or decree is obtained by fraud of the plaintiff or his attorney, equity will relieve against the same. See *De Louis et al.* v. *Meek et al.*, 2 Greene, 55; *Sloo* v. *Bank of Illinois*, 1 Scam., 444 and note; *Allen* v. *Stone* (a strong case), 10 Barb., 547; *Holker* v. *Parker*, 7 Cranch, 436; *Emerson* v. *Brown*, 7 M. & G., 476; *Field* v. *Gibbs*, 1 Pet. C. C., 158; *Huffman* v. *Burt*, 7 Iowa, 320; 3 Grn. & Wat. N. T., 52; *Pourl* v. *Spalding*, 3 G. Greene, 443; *Messenger* v. *Marsh et al.*, 6 Iowa, 491; *Rice* v. *Griffiths*, 9 Id., 539. The decree óf foreclosure only concluded the rights of the parties (properly in court) to the bill. *Himestreet* v. *Winnie*, 10 Id., 430; *Furth* v. *Wainwright et al.*, 4 Gil. (Ill.), 420; *Robson* v. *Eaton*, 1 T. R., 62; *Bayland* v. *Buckland*, 1 W. H. & G., 1.

2. The answer was in the handwriting of the plaintiff's attorney, and defendant Parnell should have taken notice of the whole record and should have seen this patent fact, particularly when the answer confirmed the only material averment charged against this plaintiff.

3. Parnell had an interest in the premises as against Blackmarr; he was a mortgagor in possession, and could not cut off the rights of the mortgagee by purchasing at the tax sale. 1 Wash. on Real Prop., 559, 591.

It is claimed that the purchase of the premises at the sheriff's sale by Wm. Parnell without knowledge of the fraud of Hasty's attorney and Hambleton, would give him a good title. This position is not true and is not law. This judgment as against plaintiff was void, not voidable. The law is, if a valid judgment is rendered but some error has been committed and the defendant neglects to appeal, or neglects to stay execution during the pendency of an appeal, and permits his property to be sold, the purchaser would take a good title, *i. e.*, all the interest of the defendant. But if the judgment is void all proceedings under it

are void, and a judgment obtained by fraud or false suggestions is void. *Borden* v. *Fitch*, 15 Johns., 121; *People* v. *Eggleston*, 13 How. Pr. (N. Y.), 123. So where the court has no jurisdiction of the party. *Bigelow* v. *Stearns*, 19 Johns., 39; *Reynolds* v. *Ovis*, 7 Comst., 269; *Dobson* v. *Pearce*, 12 N. Y. (2 Kern.), 156.

It then follows that if this judgment obtained in the case of Hasty against Blackmarr and plaintiff, was void as to plaintiff, for want of jurisdiction of the defendant, and for fraud, nothing could be taken against the defendant by the decree, any more than as though a forged deed had been procured and filed and recorded, and an innocent party deceived, or, as has been the case, the sheriff serves process upon the wrong person by mistake; and, if judgment is rendered upon such service against a person not served, the judgment is void; the court, in fact, not having obtained jurisdiction, and the judgment is void on account thereof. See *Farnham* v. *Hildreth*, 32 Barb., 277; *Towsley* v. *McDonald*, 32 Barb., 604.

*L. W. Griswold* for the appellee.

1. The plaintiff's remedy should be by action to redeem after first offering or tendering the amount required for that purpose; the premises having been sold on special execution, under decree of foreclosure of the senior mortgage, and also for taxes delinquent. 1 Story Eq. Jur., § 64; Rev., 1860, §§ 780, 3348, 3334, 3364; *Armstrong* v. *Pierson*, 5 Iowa, 317, 330, 331.

2. The presumption in favor of innocence applies as well in civil as in criminal cases. Defendants being purchasers, or deriving title under and by virtue of a judicial sale on the judgment or order of a court of record, on decree of foreclosure and sale, and also on sale of the land for taxes delinquent, are to be considered as *bona fide* pur-

chasers of the property, and should be protected under the law. 16 Ohio, 324; 2 Am. Lead. C., 702; 2 Lead. C. in Eq., 75, 110, 111.

Where an attorney enters an appearance, confesses judgment or suffers a default, the judgment is regular though the defendant was not served with process, and never authorized the attorney to appear; and when the adverse party, or innocent third parties have acquired rights by proceedings in the name of a party who afterward denies the authority of the attorney, the courts permit the proceedings to stand. The parties' remedy is against the attorney. 6 Johns., 34, 297; 9 Paige Ch., 496; 4 How. Pr., 442.

4. The purchaser at a sheriff's sale (judicial) will take the premises discharged of every claim or title of which he had no notice at the time of the purchase; and where the sale is in pursuance of a judgment or judicial order, the same cannot be impeached on the ground of secret fraud in obtaining the same. 2 Lead. C. in Eq., 110, 111; N. Y. B., 95; 3 Abbott N. Y. Dig., 555.

5. Transactions vitiated by fraud are violable only, and cannot be avoided to the prejudice of intervening rights of third parties. 2 Lead. C. in Eq., 81, 83; 10 Barb., 425; 15 Eng. Law and Eq., 101.

6. When a court of general jurisdiction is required to exercise its power on a state of facts, the existence of the fact cannot be afterwards collaterally questioned; and the recitals in the record, of the appearance by attorney, cannot be contradicted, nor can the truth of such recitals in the record be questioned. *Pillsbury* v. *Dugan, Adm., &c.,* 9 Ohio, 127; 2 Hill, 64; 2 Am. Lead. C., 800, 803, 812, 813, 814, 818.

7. At the time of the foreclosure and sale, under the Holland mortgage in 1859, there was no equity of redemp-

tion after sale on foreclosure, and thereafter the title vested absolutely in the purchaser.

8. The execution of a mortgage in blank, without inserting a description of the property, but authorizing a third party to insert a description thereof at a time subsequent to the execution and delivery thereof, which being done without a further acknowledgment or redelivery, is not a proper execution and delivery of the mortgage, and cannot be considered the act and deed of the parties executing the same. 18 Johns., 107; 13 Id., 97, 537; Willard on Real Estate, 509; 10 N. Y. 509.

9. Parnell, independent of the sale on foreclosure, acquired a valid interest, and is entitled to the treasurer's deed for the premises in controversy, in virtue of the sale thereof to him for taxes, more than three years having elapsed since the sale thereof, and there having been no redemption. Rev., §§ 781–784, &c.

10. Both law and equity look with disfavor upon one who is himself heedless or negligent of his rights; nor will they interfere for the purpose of preventing the more vigilant from fortifying himself in his title or interest by purchasing outstanding interests or titles, especially as against one who is himself guilty of negligence, by sleeping upon his rights for many years, until the rights of third parties, and innocent purchasers, have intervened. 2 Lead. Cas. in Eq., 53, 68, 69, 76, 83, 85, 86, 89, 90.

DILLON, J. — It will be perceived from the statement, that the case brings into consideration the general subject of the *power of attorneys-at-law to bind or conclude those for whom, without authority, they assume to appear and act.* The importance of the principles involved, as well as the unsettled state of the authorities, induced us to reserve the cause from the last term until the present, that it might be examined with the

1. ATTORNEY: authority presumed.

requisite thoroughness, and decided upon the most mature deliberation. That the existing state of the law may be understood, it is necessary to trace the history of the adjudications respecting the powers and authority of attorneys-at-law.

The ancient common law required the parties to be present and prosecute, or defend in person. It required a patent, or special authority from the crown (*a dedimus potestatem de attornato faciendo*), to enable parties to appear by attorney. Afterwards, by various statutes, the right to appear by attorney was recognized. But a party might still sue or defend in person, and the right to prosecute or defend by attorney was a mere privilege, intended for the convenience and benefit of suitors. See, on the subject, 3 Bl. Com., 25; Fitz. N. B., 25, 95; Gilbert C. P. C., 8; *Thompson* v. *Blackburn*, 1 N. & M., 271; 2 Keble, 199; Glanville, lib. xi, c. 1; Com. Dig. Attorney (B), 7; 1 Salk., 86; Id., 88; 6 Mod., 16; Cro. Jac., 695; 1 Stra., 693; 1 Keble, 89; see also 1 Binney, 214; Id., 469; 5 Dana, 11; 3 Pa., 72, 76. In the earlier stages of the law, as the above authorities show, attorneys were appointed orally in court. Afterwards they were allowed to be appointed by warrant out of court, and the practice of the court was to require the warrant to be filed, which might however be done at any time before judgment, and the want of it in the record was aided by statute, and could not be assigned for error. This strictness has been gradually relaxed, until it is at the present time the settled rule, that although an attorney cannot, without special authority, admit service of *jurisdictional process* upon his client, yet it will be presumed in all collateral proceedings, and perhaps on appeal or in error, that a regular attorney-at-law who appeared for a defendant, though not served, had authority to do so. See authorities *supra;* also, *Lagow* v. *Patterson* (on appeal), 1 Blackf., (Ind.), 327 (1824); *Hill*

v. *Ross* (on appeal), 3 Dall., 331; *Osborn* v. *The Bank of the United States* (in error), 9 Wheat., 738, 829 (1824); *Horner* v. *Doe* (ejectment), 1 Ind., 130, 133; Hare and Wallace's notes to *Mills* v. *Duryee*, 2 Am. Lead. Cases, and authorities there collected; *Prince* v. *Griffin*, 16 Iowa, 552; *Masterton* v. *LeClaire*, 4 Minn., 163 (1860); *Shelton* v. *Tiffin and Perry*, 6 How. U. S., 163, per McLEAN, J.

We may observe in passing, that it results from this doctrine, that in order to enable a party who has been rep-

2. — rem-
edy.

resented by an unauthorized attorney, to be relieved, he must negative the presumption of authority in the attorney; and this he cannot ordinarily do by an appeal or writ of error. He must apply for relief either by motion or by bill in equity. And many decisions hold (how correctly, on principle, we need not examine at large) that in a suit or *a direct action on a judgment* ren-

3. — do-
mestic and
foreign
judgment.

dered against a party upon an unauthorized appearance by an attorney, if that judgment be a *domestic* one, the party cannot plead in defense his ignorance of the suit and the attorney's want of authority to appear for him. *St. Albans* v. *Bush*, 4 Vt., 58 (1832) (compare with *Campbell* v. *Bristol*, 19 Wend., 101, where in just such a case relief was granted *on motion*); *Lessee of Pillsbury* v. *Dugan's Adm'r* (ejectment), 9 Ohio, 117 (1839); *Holbert* v. *Montgomery's Adm'r*, 5 Dana, 11 (1837), where the reasons based upon public policy for this vein are very forcibly stated; *Field* v. *Gibbs*, 3 Pet. C. C. 155; 2 Am. Lead. Cas., 4th ed., 803, and the authorities collected.

But the contrary is now settled both in the federal and State courts with respect to *foreign* judgments, and consequently a judgment debtor, in an action against him on the judgment of another State, may successfully defend by showing that the attorney who entered an appearance for him had no authority to do so. *Hindman* v. *Mackall*, 3 G.

Greene, 170; *Latterett* v. *Cook*, 1 Iowa, 1; *Baltzell* v. *Nosler*, Id., 588; *Shelton* v. *Liffin*, 6 How. U. S., 164 (1848); *D'Arcey* v. *Ketchum et al.*, 11 Id., 165 (1850); *Harris* v. *Hardeman et al.*, 14 Id., 334 (1852); *Sherrard* v. *Nevins et al.*, 2 Ind., 241 (1850); *Thompson* v. *Emmert*, 15 Ill., 415 (1854), and prior cases in that State there cited; *Miller* v. *Gaskins*, 2 Rob. (La.), 94 (1842); *Gleason* v. *Dodd, Adm'r*, 4 Metc., 333 (1842), and prior Massachusetts cases cited; Id., 343; *Aldrich* v. *Kinney*, 4 Conn., 380; *Starbuck* v. *Murray*, 5 Wend., 148, 161 (1830); *Wilson* v. *The Bank*, 6 Leigh (Va.), 570; *Norwood* v. *Cobb*, 24 Lex., 551; *Rape* v. *Heaton*, 9 Wis., 328; *Price* v. *Ward*, 1 Dutch. (N. J.), 225, and prior New Jersey cases referred to; *Hess* v. *Cole*, 3 Zabr., 116.

It may be doubted whether the above distinction between foreign and domestic judgments is fully settled; and if so, whether it rests on sound principles. Is not the *gravamen* the same in the one case as in the other, and does it not consist in the unauthorized act of the attorney? We deem the rule properly settled as to foreign judgments. Why should it not equally apply to an action on a domestic judgment? The only reason that occurs to us is, that in the case of a foreign judgment it is impossible, or at least unreasonable, to require the defendant to go to the courts of the State which rendered it, and attack it directly by a bill or motion; hence, he is permitted to plead the want of authority in the attorney, defensively and collaterally. Whereas in the case of a domestic judgment it may be deemed better to force the party to assail it *directly* (thus giving the court an equitable control over the proceedings), by prohibiting him from resorting to the plea of a want of authority in the attorney, collaterally, as a defense to a *scire facias*, or direct action on the judgment. If the distinction is maintainable, it must be on some such ground.

Certain it is, however, as the authorities hereinafter cited

will show, that the party is entitled to relief when an unjust judgment, though a domestic one, has been rendered against him by fraud or collusion, or by the appearance of an unauthorized attorney, if the party seeks the relief by bill or motion promptly, and has been guilty of no laches.

No examination of this subject would be complete or satisfactory without a reference to the leading cases respecting it, decided in the English and American courts. It is laid down as law in an early case in Salkeld, that "when an attorney takes upon himself to appear, the court looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against him." 1 Salk., 86.

The rule (taking the above loose report to mean what the case is generally cited to prove), has, we submit, no foundation in reason to stand upon. It obliges a person to be bound by the unauthorized act of a mere stranger. It binds him by a judgment of a court without a day in court. It relieves the other party of a duty which, in reason belongs to him, viz., *to serve his process and to see, at his peril, that his adversary is in court.* And it carries out this unsoundness by compelling the *wrong party* to look to the attorney. True reason and logic would say, if an attorney appeared for me without my knowledge or authority, express or implied, I should not be bound by the act if never ratified or promptly disavowed, and if the adverse party, being ignorant of the want of authority, and carelessly omitting to serve process or to require the attorney to show his authority, has been damaged, he and not myself should be the one to look to the attorney.

That such a rule as the one laid down in 1 Salkeld, 86, *supra*), should permanently stand, without modification, as the law of enlightened tribunals, would be impossible. But, as I shall proceed to show, the courts, instead of over-

turning it at once, have gradually undermined it, until, if it now stands, it is tottering and ready to fall. The rule, as stated in 1 Salkeld, 86, was essentially qualified in the King's Bench, as will appear by an *anonymous case*, also reported by Salkeld, p. 88, decided in the 2d Anne, in the time of Lord HOLT. As the case last cited is the leading English case and the foundation of all the discussions on this subject, we give the entire report, as found in Salkeld, at page 88. It is as follows:

"An attorney appeared and judgment was entered against his client, and he had no warrant of attorney; and now the question was, if the court could set aside the judgment? *Et per Cur.* If the attorney be able and responsible, we will not set aside the judgment. The reason is, because the judgment is regular, and the plaintiff ought not to suffer, for there is no fault in him; but if the attorney be not responsible, or suspicious, we will set aside the judgment; for otherwise, the defendant has no remedy, and any one may be undone by that means." (And see *S. C.*, 6 Mod., 16, where the language used is, that "if the attorney be a beggar, or in a suspicious condition, the court will set aside the judgment.")

It may be that the only objection made here was the want of a *warrant* of attorney, and not the want of authority in point of fact. But assuming that it was the latter, the right to relief is thus illogically made to depend upon the question whether the attorney was or was not responsible, and not upon the existence of his authority.

Such a doctrine could not impose upon the fine understanding and solid judgment of Lord MANSFIELD, and the case of *Robson* v. *Eaton* (K. B. 1785), 1 Term 62, without professedly overruling the cases in Salkeld, does so in effect by proceeding upon directly opposite principles. This will be obvious by a brief statement of the case, which was an action for money had and received. The

defendant pleaded that the plaintiffs, by *William Hodgson*, his attorney, had before sued the defendant and recovered a judgment for the same cause of action; that the defendant, by the order of court, paid the amount of such recovery into court, and the same had been received by the plaintiff's said attorney. This was apparently a good defense. To it the plaintiff replied that he never retained the said *Hodgson* to sue the defendant or authorized him to receive the money. Both parties were innocent of fraud. The warrant of attorney under which *Hodgson* acted was forged; *Hodgson*, ignorant of the forgery, collected the money, and in good faith paid it to the forger. And the question was, could the defendant rely upon the former recovery, or must he pay the money twice? Now, I suppose, if on grounds of public policy, a *defendant* is bound by the unauthorized act of an attorney, who appears for him, the plaintiff ought, upon the same grounds, to be bound by the unauthorized act of an attorney who appears for him. The principal is the same. It was decided that the defendant must again pay the money. And the ground of the decision was, that the "attorney who prosecuted the former suit in the plaintiff's name, had no authority given him by the plaintiff for so doing." It was considered that the attorney would be liable to the *defendant* for the damage thus occasioned to him, and would have recourse against the party who imposed upon him the false power of attorney, and received the money. It will be remarked, therefore, that the plaintiff was not considered bound by. the act an attorney he never employed, nor was he compelled to look to that attorney, but the decision went as before stated, upon a doctrine directly the reverse of this. It is impossible to reconcile it with the prior cases in Salkeld.

While this was the state of the law in England, the case of *Denton* v. *Noyes* (the leading New York case on this

subject), 6 Johns., 296 (A. D., 1810), arose for decision. The court (KENT, Ch. J., delivering the judgment of the majority, and VAN NESS, J., an able dissenting opinion) adhered to the rule as laid down in Salkeld, but added another essential qualification. After approving of the above quoted case (1 Salk., 88), and the modification there made, KENT, Ch. J., adds: "I am willing to go still further, and, in every such case (*i. e.*, where there has been an unauthorized appearance), to let the defendant into a defense of this suit."

The points ruled by the court in that case are correctly stated in the syllabus, and are as follows:

1. Where "an attorney of this court appeared for a defendant, against whom a writ had been issued but not served, and, without authority from the defendant, confessed a judgment which was entered up in vacation, the judgment was held regular. An appearance by an attorney of the court, without warrant, is good as to the court, and the defendant has an action against the attorney. *Aliter*, if there be any fraud or collusion between the plaintiff's attorney and the attorney for the defendant, or if the attorney for the defendant be not responsible, or perfectly competent to answer to his assumed client, the court will relieve against the judgment."

2. Where there is no fraud "the court, in order to protect the plaintiff from suffering by the act of the attorney, and at the same time to save the defendant from injury, will let the judgment stand, but stay all proceedings, and let in the defendant to plead, if he has any defense."

In explanation, KENT, Ch. J., observes: "If there had been any collusion between the plaintiff and the attorney [who assumed to act] for the defendant, it would have altered the case; but there is none shown or pretended, and my whole opinion proceeds on the ground that the plaintiffs have acted in good faith. I am disposed, there-

fore, to prevent all possible injury to the defendant, and at the same time save the plaintiffs from harm. This can be done, only, by preserving the lien, which the plaintiffs have acquired by their judgment, and by giving the defendant an opportunity to plead, if he has any plea to make, to the merits." 6 Johns., 301.

And this case has since been followed in, and is the law of New York, though the common law rule, even as thus modified and shorn of its severity, has been frequently pronounced a hard one, and the majority opinion in *Denton* v. *Noyes*, criticised by subsequent judges, as will be seen by reference to the following cases: *Meacham* v. *Dudley*, 6 Wend., 514; *Williams* v. *Van Valkenburg* (approving VAN NESS' dissenting opinion, but following the majority on the principle, of *stare decisis*), 16 How. Pr., 144 (1858); *Ellsworth* v. *Campbell* (declaring that inability of attorney to pay, rightly had nothing to do with the question), 31 Barb, 134 (1860); *Allen* v. *Stone* (strongly dissenting from but following principal cases), 10 Barb., 547 (1851); and see *American Insurance Company* v. *Oakley*, 9 Paige, 496 (1842); compare *Campbell* v. *Bristol*, 19 Wend., 101 (1838).

It will thus be perceived that *Denton* v. *Noyes* so far recognizes the early English rule as to hold that want of authority of an attorney for the defendant to appear (the plaintiff being innocent), is not alone sufficient cause for setting aside the judgment, if the attorney who appeared and acted be responsible and able to indemnify the party. And it will also be seen, by reference to the cases above cited, that the prevailing opinion, were the question in that State *res nova*, is that, on principle, the responsibility or otherwise of the attorney has nothing to do with the question, and that no party, not guilty of negligence, should be bound by the act of another, which was wholly and confessedly unauthorized and unratified.

And in other States it is now the constant practice, as

Harshey v. Blackmarr.

we have before stated, to relieve parties, sometimes by motion, and sometimes in chancery, from judgments rendered against them in consequence of the totally anauthorized acts of a pragmatical attorney. See, without quoting, *Critchfield* v. *Porter* (discarding early English rule, approving *Robson* v. *Eaton*, *supra*), 3 Ohio, 518 (1828); *Shelton* v. *Tiffin* (strong case, referred to, *infra*), 6 How. (U. S.), 163 (1845); *Campbell* v. *Bristol*, 19 Wend., 101 (1838); *Truett* v. *Wainright*, 4 Gilm. (Ill.), 420; *De Louis* v. *Meek*, 2 G. Greene, 55 (1849); *Powell* v. *Spaulding*, 3 Id., 443; *Ridge* v. *Alter* (relief not dependent upon the fact of actual fraud, or question of attorney's responsibility), 14 La. Ann., 866 (1859); *Marvel* v. *Manouvrier*, Id., 3, distinguished from *Walworth* v. *Henderson*, 9 Id., 339; *Hefferman* v. *Burt*, 7 Iowa, 321 (*arguendo*); *McKelvay* v. *Jones*, 2 Harr. (N. J.), 345; approved, *Price* v. *Ward*, 1 Dutch., 225 (1855). These cases, and the other New Jersey cases referred to, repudiate *Denton* v. *Noyes* and the early English rule. We may also observe, in passing, that where relief is applied for, under chapter 141 of the Revision (see corresponding provisions in Stanton's Kentucky Code, 230), the mode of procedure there provided will govern. And in other cases, as a matter of practice, it may frequently be well enough for the court, where the plaintiff is innocent, to allow the judgment to stand as security. Injury is essential to relief. *Piggott* v. *Addicks*, 3 G. Greene, 427. But when the defendant is innocent, guiltless of negligence, and has a good defense on the merits, it is certainly unjust and illogical to make his right to relief turn upon the question of the attorney's responsibility.

And in England, in the Court of Exchequer, the rule as laid down in Salkeld has quite recently, and upon great consideration, been criticised and partially, at least, overturned. See *Bayley* v. *Buckland*, 1 Exch. (1 W., H. & G.), 1 (1847);

16 L. J. (N. S.), 204 Exch., where ROLFE, B., alluding to 1 Salkeld, 88, says: "The non-responsibility, or suspiciousness, of the attorney is but a vague sort of criterion of safety to the defendant, and by the hypothesis the defendant is wholly without blame, and may, notwithstanding, be ruined. It is true that the plaintiff is equally blameless, but then the plaintiff, if the judgment be set aside, has his remedy against the defendant as before, and suffers only the delay and the possible loss of costs." And the court, where the appearance for the defendant is unauthorized, proceed to make a distinction between cases where process has been served, and cases where it has not. If, says the court, the *process is served*, the plaintiff, innocent of any fraud or collusion, and the attorney is responsible, the party for whom the attorney appeared is confined to his remedy against him. [This would overturn *Denton* v. *Noyes*, as in that case no process was served.] The reason given is, that here the plaintiff is without blame, and the defendant is guilty of negligence in not appearing, and making defense by his own attorney, if he has any defense on the merits. But, on the other hand, "if the plaintiff, *without serving the defendant*, except the appearance of an unauthorized attorney for the defendant, he is not wholly free from the imputation of negligence; the law requires him to give notice to the defendant by serving the writ, and he has not done so. The defendant there is wholly free from blame, and the *plaintiff* not; so we must set aside the judgment."

This case, *Bayley* v. *Buckland*, *supra*, was very carefully considered, and the prior cases called to the attention of the court. If any part of the early rule shall stand, it should only do so with the above modification. Those inclined to pursue the subject further in the light of English adjudications may consult: *Doe* v. *Eyton*, 3 B. & Ald., 785; *Hubbard* v. *Phillips*, 13 M. & W., 702, (1845); 14 L.

J. (N. S.), 103, Exch.; *Williams* v. *Smith*, 1 Dowd P. C., 632; 5 Id., 305; *Murdy* v. *Newman*, 1 Exch. (Cr. M. & Ros.), 402, (1834); *Odell* v. *Odell*, 1 Irish Exch., 81; *Morgan* v. *Thorne*, 7 M. & W., 400; 3 C. & B., 745; 1 Chitty, 193, *a*; 2 Id., 170; *Hawbidge* v. *De La Crouce & Francois*, (follows 1 Salk., 88, but engrafts another exception), 3 M. G. & S., (54 Eng. C. L.), 742 (1846); *Stanhope* v. *Firman*, (the C. P. recognizes 1 Salk., 88), 3 Bing. N. C., 303; *S. C.*, 32 Eng. C. L., 145, and 5 Dowl. P. C., 357 (A. D. 1836).

In the case at bar the demurrer admits the truth of the following facts, viz.: 1. That the present plaintiff was a *non-resident of the State*, and therefore not personally amenable to its jurisdiction.

*5. — sale under judgment rendered upon fraudulent appearance.*

2. That he had *no notice*, legal or otherwise, of the *Hasty* foreclosure proceeding; that *no service*, personal or constructive, was made upon him.

3. That the plaintiff in that suit (Hasty) or his attorneys procured an answer to be filed by *fraudulent representations*, and by an attorney who had from the present plaintiff no *right, shadow or color of authority* to do so.

4. That the present plaintiff had rights which were injuriously affected by that decree.

5. It does not affirmatively appear from the petition that the plaintiff has been guilty of laches in attacking the Hasty decree, that is, it does not appear that rights on the part of third persons attached after the plaintiff had knowledge of the decree, and prior to the commencement of this suit.

6. It is admitted that there is no statement in the petition that the attorney or Hasty is insolvent or unable to respond in damages.

Assuming these to be the facts, it is clear that if there had never been any sale under the Hasty decree, or if Hasty had become the purchaser and were still the owner of the land, the present plaintiff would, according to the

principles of law hereinbefore considered, and notwitstanding the recitals in the decree as to jurisdiction, be entitled. See, as to recitals, the well reasoned judgment of MARCY, J., in *Starbuck* v. *Murray*, 5 Wend., 148, 158; *Dozer* v. *Richardson*, 25 Geo., 90; *Kemball* v. *Merrick*, 20 Ark., 12; *Hess* v. *Cole*, 3 Zabr., 116; *Shelton* v. *Liffin*, 6 How. (U. S.), 163; *Watson* v. *The New England Bank*, 4 Metc., 343; *Gleason* v. *Dodd*, Id., 333.

And this brings us to the more difficult question, whether, assuming these facts, and the further fact that the demurrants in the case at bar are *innocent purchasers* of the land, the plaintiff is entitled to relief against *them*.

This obviqusly involves the further question, whether, on the above facts, the Hasty decree, as against the plaintiff, is *utterly void*, or only *voidable*. If void, the plaintiff (unless equitably barred by his negligence or otherwise, a question not before us) is entitled to relief against everybody. If voidable only, he would not be entitled to relief against *bona fide* purchasers for value.

It is our opinion that if the facts stated in the petition, and above assumed, are true, the decree, as to the plaintiff, was a *nullity*, and could not be the basis of any valid sale. We see no escape from the conclusion that it is good or bad — binds him or does not bind him; *there is no half way house.*

The most of the cases heretofore cited, arose between the immediate parties to the judgment or decree. In their facts, therefore, they would not be wholly applicable to the present aspect of this case, though their principles have more or less bearing upon it. In arriving at the conclusion that the decree, on the facts assumed, would be *wholly null and void*, as to the present plaintiff, we have been much fortified by finding that such would be the judgment of the civil law, under such circumstances. By the Roman law, and the practice under it in modern Europe, a party to a

suit may appear in person or by attorney (procurator). Unlike the common law, there is no presumption that the procurator has authority to represent his client. It is the universal practice, as I am imformed by a learned civilian, now a member of the bar of this court (Dr. Claussen), for the procurator to file his written warrant of attorney as the first step, before argument commenced. This is required by the court. And as applicable to the question now before us, the civil law acts upon the principle, that the act of two persons cannot bind or affect a third person, a stranger to the act. *Inter alios acta vel judicata aliis non nocere.*

And it is clear that the civil law would hold such a decree as the one obtained by Hasty, an absolute nullity as to all persons. Code VII, Lib. LX, LVI, S. P.; Dr. Linde's Lehrbuck of German Civil Proceedings, § 116. As to France, see Code de Proce. Civ., titre XVIII; Pothier Cour. de Maud., § 130. And see also, Civil Law authorities cited by VAN NESS, J., 6. Johns., 314, 315; *Ridge* v. *Alter*, 14 La. Ann., 866; Id., 3.

Our conclusion, above indicated, is fully warranted and supported by a decision of the Supreme Court of the United States which covers every question, as to the unauthorized appearance, arising in the case at bar, so far as it is presented by the demurrer. We refer to the case before cited of *Shelton* v. *Tiffin*, 6 How. (U. S.) 163, decided in 1848. In order that the extract which will be presently made from that decision may be understood, a brief reference to the facts of the case is necessary. These are quite numerous, but on the point which now concerns us were as follows: Two citizens of Virginia (Moseby and Bouldin) sued, in the Circuit Court of Louisiana, John M. Perry, a citizen of Louisiana, who was served, and also *Lilburn P. Perry* (his son), a citizen of Missouri, who was *not served*. One Crawford, a regularly admitted attorney of the

court, filed an answer for *both* Perrys, but was not *authorized* to do so by L. P. Perry. His filing an answer for Lilburn was by mere inadvertence, not through intentional fraud. The plaintiffs in that action (Moseby and Bouldin) were innocent of any fraud or collusion, and on a regular trial obtained judgment for $7,560, on which execution issued and certain property of Lilburn P. Perry was seized and sold to one Samuel Anderson. This property consisted of notes secured by mortgage, and of which Anderson was the maker.

After holding that where fraud is alleged and relief sought against a judgment and a judicial sale of property, that a court of equity will sustain a bill and that it is not demurrable, on the ground that the plaintiffs have a plain and adequate remedy at law, the court, per Mr. Justice McLEAN, who delivered the opinion, says:

"The great question in the case, arises out of the judicial sale of the mortgage debt to Anderson, the mortgagor, under a judgment obtained by Moseby and Bouldin against L. P. Perry and John M. Perry. Had the Circuit Court which rendered that judgment, jurisdiction of the case? The plaintiffs (Moseby and Bouldin) were citizens of Virginia, John M. Perry was a citizen of Louisiania, *and L. P. Perry*, of Missouri. *No process was served* upon L. P. Perry, nor does it appear that he had notice of the suit until long after the proceedings were had. But there was an appearance by counsel for the defendants, and defense was made to the action. This being done by a regularly practicing attorney, it affords *prima facie* evidence, at least, of an appearance in the suit by both the defendants." The court then refer to the evidence of Crawford, the attorney, to the effect that the answer for L. P. Perry was filed without authority from him, and in respect thereto remark: "This evidence does not contradict the record, but explains it. The appearance was the act of the counsel, and not the act of the

court. Had the entry been, that L. P. Perry came person-ally into court and waived process, it could not have been controverted. But the appearance by counsel, who had no authority to waive process, or to defend the suit for L. P. Perry, may be explained. An appearance by counsel under such circumstances, to the prejudice of a party, sub-ject the counsel to damages ; *but this would not sufficiently protect the rights of the defendant.* HE IS NOT BOUND BY THE PROCEEDINGS, *and there is no other principle which can afford him adequate protection.* The judgment, therefore, against L. P. Perry must be considered a *nullity,* and con-sequently did not authorize the seizure and sale of his property."

An execution sale under a fraudulent judgment is void, if the purchaser had no knowledge of the fraud. But in this case, L. P. Perry was not amenable to the jurisdiction of the court, and did no act to authorize the judgment. He cannot, therefore, be affected *by it,* or *by any* proceed-ings under it. In this view it is unnecessary to consider the objections to the procedure under the execution. * * The judgment being *void* for want of jurisdiction in the court, no right passed to Samuel Anderson under the marshal's sale. 6 How. (U. S.) 163, 186, 187.

In reaching this conclusion, we have not overlooked the consideration that the records of a court should have a large degree of sanctity attached to them. Parties who have been negligent, should not, especially if intervening rights have grown up, be permitted to impeach them by extraneous evidence. And in all cases, the right should be clear, the injury palpable, and the evidence convincing. The reason for this is manifest in the consideration, that after the lapse of time it is very easy for a party to say, and under our law swear, that an attorney who is perhaps dead had no authority to represent him, and correspond-ingly difficult for the other party to show the contrary.

The true inference from this is, not to hold the unauthorized judgment valid, but to require the party assailing it to make a clear case, and to hold that a mixed case will not do.

Had Parnell or his grantees examined the record in the Hasty foreclosure, while they would have the right to rely upon the presumption of regularity, they would have discovered that the plaintiffs' mortgage was first recorded, and therefore *prima facie* the first lien; that no service of process was made or even attempted upon the plaintiff; and that the answer which confessed material facts was in the handwriting of plaintiffs' attorney.

If they had purchased the Hasty decree or judgment before sale on execution under it, it would have been a mere *chose in action*, and they would have stood in Hasty's shoes respecting it. *Burtis* v. *Cook and Sargent*, 16 Iowa, 194; *Gett & Brewster* v. *Lucas*, 17 Iowa, 503.

It cannot validate a judgment well for want of jurisdiction, that there has been a sale under it. We wish to emphasize another thought which is this, that the conclusion reached does not excuse, but in view of public policy, requires a party who has been represented by an unauthorized attorney, to disavow and disaffirm his action promptly upon receiving knowledge thereof. If he does not thus speak when he ought to, the court will not hear him when he wants to, especially if his delay has been prejudicial to the rights of third parties. We simply recognize the right of a party to be relieved against an unauthorized judgment, in a strong case like the present, also recognizing the fact that his own negligence or unreasonable delay, and the like, may defeat the right. In applying these principles the court should endeavor to do justice in the particular case, and when they effect this, they will not be far from the right.

We also observe that the doctrine of this opinion applies

Harshey v. Blackmarr.

only to cases where there is *a total want of authority*, on the part of the attorney, and not to cases where an attorney regularly employed has *exceeded* his authority.

II. The description of the premises in the plaintiffs' mortgage is as follows: " We, J. L. Blackmarr and Belinda, 6. CONVEY- his wife, sell and convey unto John Harshey, ANCE: de- &c., the following described premises in Mar- power of attorney. shall county, Iowa, to-wit: Eighty acres of land, bought of Rev. James M. Holland, lying two miles southward from Marshalltown, in Marshall county, Iowa, and so soon as the numbers of the above land are obtained we agree that they shall be inserted in this deed, as our voluntary act, and the recorder of Marshall county is instructed to do the same for us." "The west half of the southwest quarter, section 10, in township 83, range 18 west. This description inserted by me as above instructed.

" THOMAS MERCER,
" *Recorder of Marshall Co., Iowa.*"

This mortgage is duly acknowledged and recorded.

It is made a ground in the demurrer that this description is insufficient; that the mortgage was executed in blank, as to the description, and, therefore, the instrument is not operative in law. The *mortgagors* do not make this objection. The instrument might be sufficient as against a subsequent incumbrancer, without reference to the addition made by the recorder; but however this might be we are clearly of opinion that they cannot object that the recorder executed the written authority conferred upon him. This authority was equivalent to a power of attorney to the recorder to do as he did.

III. It is unnecessary to consider at length the question in relation to the tax sales and certificates. If the averments of the petition are true, and the demurrer admits that they are, the plaintiff is not barred thereby. Seeking to

7. FORE-
CLOSURE:
tender.  foreclose (as he alleges) the *first* mortgage, he is not bound to tender redemption of a *second* mortgage as claimed by the demurrants. *Anson* v. *Anson, ante.*

We only add· that the court, when it sustained the demurrer of part of the defendants, also erred in dismissing the petition as to Blackmarr and the others who made no defense. Judgment reversed and cause remanded, and appellees have leave to answer in the District Court.

Reversed and remanded.