# SUPREME COURT.

### FLETCHER WILLIAMS agt. JACOB VAN VALKENBURG.

Where a plaintiff undertakes to obtain a judgment against a defendant, without any appearance by the latter, either in person or by attorney, he should be required at his peril to bring such defendant *within the jurisdiction* of the tribunal in which he is proceeding, or his proceedings should be set aside as irregular, and totally defective and void.

Therefore, where the service of the summons and complaint was made by an agent of the plaintiff, not an officer of the court, upon the *father* of the defendant, supposing him to be the defendant in the action, and judgment was entered against the defendant upon an affidavit of personal service of the summons and complaint;

*Held*, that although it appeared that the defendant subsequently received the summons and complaint from some member of his father's family, he did not appear in the action, and no action by such service, was commenced against him, and consequently, the judgment and execution were entirely irregular and defective, and were set aside for want of jurisdiction.

The proceeding was a hostile one as respected the defendant, in no respect, for his interest; and the law does not go the length of compelling a party either to give his adversary notice of such defects, (service of process, &c., on the wrong person,) or to confess jurisdiction. He might be held to waive a mere irregularity, by not proceeding the first opportunity to correct it, but not a jurisdictional defect. (*The case Anonymous, 4 How.* 112, *is overruled.*)

The question of an *unauthorized appearance* by an *attorney*, examined and discussed.

*Seventh Judicial District, General Term, June,* 1858.
*Present,* WELLES, SMITH *and* JOHNSON, *Justices.*

APPEAL from order denying motion to set aside judgment.

The judgment was duly entered on the 3d of December, 1857, upon affidavits showing the service of summons and complaint in the action, on the defendant personally, on the 12th of November, previous; that there had been no appearance on the part of the defendant, and no answer or demurrer received by the plaintiff's attorney. By the affidavits read upon the motion, it was shown on the part of the defendant, that he had no knowledge of the entry of the judgment, until the 28th of December, when the sheriff called upon him with the execution, and that no summons or complaint had ever been served on the defendant, but that they were served on James L. Van Valkenburg. On the part of the plaintiff, it appeared that James L. Van Valkenburg was the father of the defendant, and that both lived at the same house; that the summons and complaint were served by one Flint, who was not an officer, but who was employed by the plaintiff's attorney to make the service; that Flint was not acquainted with the defendant or with James L. Van Valkenburg; that on the 12th of November, he went to the house where the defendant and his father lived, and inquired for the defendant; that he found a person there, who upon inquiry, said his name was Van Valkenburg, and as Flint understood, that he was the defendant; and that Flint served the summons and complaint upon that person, supposing him to be the defendant. It appears, however, by the affidavit of James Van Valkenburg, that he was only inquired of whether his name was Van Valkenburg,

and that on his answering in the affirmative, Flint handed him the papers and left, before he ascertained what they were, or who they were for.

It further appeared, that soon after Flint left, the defendant came home, and that the summons and complaint were then handed to him by some member of the family, and he was informed that they were intended for him, and that he took them and went and consulted counsel, who advised him that no action was commenced against him, by such service, and to pay no attention to it, until he got ready to pay the note on which the action was intended to be commenced. It also appeared, that neither the plaintiff's attorney nor Flint, knew or suspected that the summons and complaint had not been served upon the defendant, until a short time before the papers in the motion were served, and that the affidavit of service upon the defendant was made, and the judgment entered in good faith. It also appeared, that a short time previous to the service of the motion papers, the defendant offered to pay to the plaintiff and tendered the amount of the note, but declined paying the costs of the judgment, or the sheriff's fees, and then first disclosed to the plaintiff and his attorney, the fact that the summons and complaint had not been served upon the defendant, but upon his father. This offer was not accepted by the plaintiff, and the motion papers were served a day or two afterwards. Nothing was shown upon the subject of the solvency of the defendant, or any of the other parties to the transaction, and the defendant makes no affidavit of merits. The justice at special term denied the motion, and the defendant appealed to the general term.

S. K. WILLIAMS, *for plaintiff*.
WM. CLARK, *for defendant*.

By the court—JOHNSON, Justice. It is an elementary principle, that no court can render a valid judgment against any person until it has acquired jurisdiction of his person, either by the service of process upon him, or by his voluntary ap-

Williams agt. Van Valkenburg.

pearance without process in some mode prescribed by law. The want of such jurisdiction, when ascertained, avoids the judgment and renders it a nullity. And the rule is the same whether the court rendering the judgment, be one of superior or of inferior jurisdiction. No man can be divested of any right, until he has had an opportuntty of being heard. (*Bloom* agt. *Burdick*, 1 *Hill*, 130.)

Whenever the absence of all authority to render the judg-ment, is made to appear, the court will, as a general rule, set it aside upon motion. To this general rule the courts have es-tablished an exception, which still prevails in cases where an attorney has appeared for a party to the action or proceeding. In such cases, courts have refused to set aside the judgment, even when it is made to appear that no action was ever com-menced, and that such attorney appeared without any author-ity whatever from the party, unless it was also shown, that the attorney so appearing was irresponsible, so that no adequate remedy could be had by the party against him. (1 *Salk.* 88 ; *S. C.*, 6 *Mod.* 16 ; *Denton* agt. *Noyes*, 6 *Johns.* 296 ; *Meacham* agt. *Dudley*, 6 *Wend.* 514 ; *Grazebrook* agt. *McCreedie*, 9 *id.* 437 ; *Adams* agt. *Gilbert*, *id.* 499.)

Numerous cases might be cited to the same effect, both in our own and the English courts, were it necessary. It is enough that the rule in such cases is well settled, and is still adhered to, both in this state and in England. In the *Anony-mous case* in 1 *Salk.* and 6 *Mod.* the court said : "If an able and responsible attorney appear for another, without a war-rant, and judgment is against him, the judgment shall stand, and the party shall be put to his action against the attorney, but if the attorney be a beggar, or in a suspicious condition, the court will set aside the judgment." This distinction has been adopted by our courts in this state, and thus by a strange confusion of ideas and principles, the validity of a judgment in such a case, has come to depend upon the pecuniary condi-tion of the attorney, instead of the jurisdiction of the court.

In the case of *Denton* agt. *Noyes*, (*supra*,) which underwent an elaborate discussion by counsel, and much examination by

the court, KENT, Chief Justice, who delivered the opinion of the majority of the court, admits that "the cases may not seem correct, if we were to reason from first principles." Yet, he says, "if the rule appears to be settled, we are not at liberty to reason in that way." In that case, however, while the court refused to set the judgment aside, although no writ had been served, and the attorney had no authority to appear for the defendant, because it did not appear that such attorney was insolvent, the court made a very important change in the then prevailing rule in such cases. While they ordered the judgment to stand, it was only by way of security, and the defendant was permitted to come in and plead the general issue, and give notice of any special matter which could be pleaded in bar, and could not be given in evidence under the general issue. This was a wide departure from the English rule, to which the court professed to adhere. And while the court felt itself constrained thus to modify the existing rule, to prevent to some extent, the wrong and injustice which might so readily be practiced under it, it is quite obvious that they added another error to the original one. They virtually compelled a party to come into court and submit himself to its jurisdiction, and defend an action, which confessedly had never been commenced against him, by a process unknown to the law, under the penalty, in case of refusal, of being compelled to submit to a judgment, which the court in fact, had no authority to render. It was said in that case, as it has been in several others, that an appearance by an attorney of the court without warrant was good as to the court. But it is impossible to see how the unauthorized act of an attorney of the court ever could give such court any jurisdiction over the person of the party whose name was thus fraudulently placed upon the records?

Reasoning "from first principles," it is clear that an attorney who has no authority to appear for a party, cannot by a mere unauthorized appearance, confer any jurisdiction upon any court over such party. But it may be, and I admit that in the case of an appearance by an attorney of the court, without

warrant, the rule is now so firmly settled, that " we are not at liberty to reason in that way." It is unfortunate, I think, that our court in the leading case of *Denton* agt. *Noyes,* instead of undertaking to modify the rule so as to make it less intolerable, did not disregard it altogether, and adopt the dissenting views of VAN NESS, Justice, whose reasons upon the original question are entirely conclusive. The exercise of judicial authority would have been scarcely greater in the latter case than in the former. The original error in the creation of the rule, and the danger to which persons are exposed under it of having false and fraudulent judgments imposed upon them to attach to their property, which may ultimately divest them of it, are sufficiently obvious and require no comment. I do not, however, propose at this day, to abrogate the rule as it now stands. I have thus far adverted to it, because its authority has been invoked to sustain this judgment, and for the purpose of showing that the rule is so entirely at variance with all sound and just principles, and so liable to abuse, that it ought not to be extended to new cases. Thus far it has only been applied to uphold judgments of this character where a *responsible* attorney has undertaken to appear for the party against whom the judgment was rendered without warrant. And even then, if there was fraud or collusion between the attorney for the plaintiff, and the attorney who undertook to appear for the defendant, the court would set the judgment aside, without inquiring whether the attorney of the latter was a " beggar," or a millionaire.

In the case before us, no one has undertaken to appear for the defendant. The acts and proceedings by which the judgment was sought to be procured, were all those of the plaintiff, and the agents and attorneys employed, were exclusively his. If the defendant's father misled the agent of the plaintiff, by personating the defendant, or by permitting the summons and complaint to be served upon him without undeceiving such agent, there is nothing in the papers to show that the defendant was privy to the deception. Neither the plaintiff's agent who served the papers, nor the person upon whom the service

was made, are in any sense officers of this court. Their acts are in no respect official acts, and there is no rule which prevents the court going behind them.

They are not good as to the court within any adjudged case in this court, and I think we are bound to go behind them, and declare them void as to the defendant. Where a plaintiff undertakes to obtain a judgment against a defendant, without any appearance by the latter, either in person or by attorney, he should be required at his peril to bring such defendant within the jurisdiction of the tribunal in which he is proceeding, or his proceedings should be set aside as irregular and totally defective and void. There may be cases where the defendant would be estopped from denying that a service similar to the one in this case, was a good service upon himself. As where he should procure another to personate him, for the purpose of misleading and avoiding personal service. But this is not such a case. All the defendant did was to remain silent. He omitted to give the plaintiff notice of his mistake, but he did not thereby adopt the service of the summons and complaint. The proceeding was a hostile one, as respects the defendant, in no respect for his interest, and the law does not go the length of compelling a party either to give his adversary notice of such defects or to confess jurisdiction. He might be held to waive a mere irregularity, by not proceeding the first opportunity to correct it, but not a jurisdictional defect.

It is no answer to say that the defendant has no merits. The question is, whether the plaintiff has any valid judgment. If the plaintiff never commenced an action and thus brought the defendant within the jurisdiction of the court, it could pronounce no valid judgment, and the judgment, which in theory, it undertook to pronounce, is a nullity. The question whether the defendant is really indebted to the plaintiff upon a note or otherwise, and to what extent, has nothing to do with the matter before us. It is claimed, however, on the part of the plaintiff, that there was in fact, a personal service of the summons and complaint upon the defendant; that inasmuch as they are shown to have come to his possession, after they

Williams agt. Van Valkenburg.

were served upon his father, it is to be regarded as service upon him; and several English cases are cited in support of the proposition. (*Emerson* agt. *Brown*, 7 *Man. & G.* 476; *Rhodes* agt. *Innis*, 7 *Bing.* 329; *Philips* agt. *Ensell*, 2 *Dowl. Pr.* 784; *Williams* agt. *Piggott*, 1 *M. & W.* 574.)

These, and other cases, do hold substantially that where there has been an attempt to make service of process upon the defendant, which has failed by reason of service being made by mistake upon another person, or by reason of the defendant's refusing to receive it, where he has kept out of the way, and it has been left with some one for him, if such process afterwards actually came to his possession, it is a good personal service. And the courts there have refused to set aside the judgment on the ground that no process has been served, unless in addition to the want of service, it is also made to appear on the part of the defendant, that such process had not come to his knowledge. But I apprehend that this is not now the practice of the English courts. Or at all events that the practice is not uniform in all the courts. In *Goggs* agt. *Lord Huntingtower*, (12 *M. & W.* 502,) on motion for leave to enter the defendant's appearance, it was shown by the plaintiff's attorney, that after several ineffectual attempts to serve the defendant with a copy of the writ of summons, he went to his residence, and was informed by a servant, over the garden wall, that her master was not at home; that he then stated to her, that he would leave a copy of the writ for her master, whereupon she put a basket over the garden wall with a string attached; that he put a true copy of the writ in the basket, and requested the servant to give it to the defendant, which she promised to do; that immediately afterwards he heard the defendant say to the servant, "take it back, I won't have it." The affidavit also stated, that the defendant saw the servant on a subsequent day, who informed him, that she had given the copy to her master. In support of the motion, the cases above referred to were cited. PARKE, B., said: "In consequence of those decisions, the judges have come to a determination that in future there shall be no equivalent for a personal service."

And ALDERSON, B., said: " Service means serving the defendant with a copy of the process, and showing him the original if he desires it." The court refused the rule, thus overruling *Williams* agt. *Piggott,* in the same court, and disregarding all the former cases. The Code prescribes how an action shall be commenced and how the summons shall be served. (§§ 127, 134.) The action must be commenced by the service of a summons, and such service in all cases, except when the action is against a corporation, an infant under the age of fourteen years, or a person judicially declared to be of unsound mind, must be made by delivering a copy of the summons to the defendant personally. This service may be made by any person not a party to the action. (*Section* 133.)

But to constitute a service, it must be delivered by some one at the request of the plaintiff or his attorney, or who is acting under his authority. A mere casual delivery by a person having no authority from the plaintiff, or his attorney, to make the service, would be no service within the meaning of the Code, and would not constitute the commencement of an action. The service here was clearly not upon the defendant, but upon another person, who was supposed by the plaintiff's agent to be the defendant. The defendant had no agency whatever in misleading the plaintiff's agent. The summons came to the defendant's hands casually, and not as a service from the plaintiff.

There is but one case in this court, that I have been able to find, where a judgment without process served, or an appearance by an attorney, has been upheld. That is an *anonymous* case in 4 *How. Pr. Rep.* 112. The sheriff in that case, undertook to serve a capias upon the defendant, but served it upon another person, and returned it served upon the defendant. There was a judgment by default, and the court refused to set it aside on motion of the defendant, there being no affidavit of merits, and held that as between plaintiff and defendant the judgment was regular, and that the return of the sheriff was matter of record, " and could not be impeached in that collateral way." This was a decision at special term, and does not

Behan agt. The People.

appear to have undergone any consideration. The ruling goes beyond any former case, and puts the false return of a sheriff to a capias, upon the same footing with an unauthorized appearance by a responsible attorney. Besides, it was a mistake to suppose that the return was attacked collaterally. It was a direct proceeding to set aside the judgment, and the return was unquestionably false. I think that decision is not law, and that it ought not to be followed. It does not come within the reasons which have prevailed in former cases. It makes a false return conclusive against a defendant, without reference to the adequacy of his remedy against any one. The rule should not be extended. I am of opinion, therefore, that no action has been commenced against the defendant, and that consequently the judgment and execution are entirely irregular and defective, and must be set aside.