CASE No. 855.

BULL v. ROWE.

1. A decree in summary process in 1869, was entered by the judge upon the docket, but no entry in the minutes was shown, and was revived without objection under summons in 1876. *Held,* that a purchaser at a sale of land thereunder had sufficiently proven the judgment.
2. The renewal, by default, of an execution under proceedings for that purpose, estops defendant from objecting that the original execution had not been returned to the clerk before the summons to renew was issued.
3. The state constitutional provision as to homestead must be so read as if that part which violates the constitution of the United States had been expressly excepted.
4. An assignment of homestead is absolutely void as to a debt contracted before the adoption of the constitution of 1868, but not in judgment at the time of such assignment.
5. An assignment of homestead made but not recorded in court, can in no way affect the rights of one whose debt, excepted from the operation of the homestead law, was not then in judgment; and a purchaser of the homestead under a judgment obtained upon such debt and levied before the record of the assignment, is entitled to recover the land.
6. This case distinguished from *McKeown* v. *Carroll,* 5 *S. C.* 75.
7. Estoppel by conduct defined.
8. A creditor, whose claim is not in judgment, remaining silent and inactive while a homestead is being assigned to his debtor, is not thereby estopped from enforcing his judgment, afterwards obtained, against such homestead.

Before HUDSON, J., Orangeburg, January, 1879.

Action by Norman A. Bull against John C. Rowe, to recover five hundred acres of land, purchased by plaintiff as the property of defendant at a sheriff's sale, in the case of· Sarah Watt against John· C. Rowe. Defendant resisted upon the ground that it was his homestead, duly assigned to him on January 27th, 1869, as appears by the following return :

" We, the undersigned, commissioners appointed respectively, by the sheriff, J. M. Cope, and John C. Rowe, to set off a homestead claimed by John C. Rowe, do make this return of our action in the premises : We do assign and set apart to John

C. Rowe, as his homestead, a tract of land upon Snake Swamp, containing five hundred acres, which we appraise at $2 per acre, together with the building and improvements thereon. All of which we assign, transfer and deliver to John C. Rowe.

"January 27th, 1869.

"  C. M. McMICHAEL,
"  W. H. SMITH,
"  W. C. Moss."

J. M. COPE
    *v.*           } *Orangeburg County.*
JOHN C. ROWE.

Personally appeared before me, C. M. McMichael, W. C. Moss and W. H. Smith, and made oath that they, the appointees of the creditors, sheriff and defendants, in the case above set forth, as appraisers, to allot a homestead to John C. Rowe, will faithfully carry out the provisions of the act of the general assembly, in such case made and provided.

C. M. McMICHAEL,
W. C. Moss,
W. H. SMITH.

Sworn to before me this 25th day of January, 1869.

GEO. BOLIVER, *Mag. ex off.*

Endorsed : Filed March 12th, 1877.

Homestead of John C. Rowe.

Recorded in Record Book No. 15, page 408, March 12th, 1877.

GEO. BOLIVER, *Register.*

Appraisement and return of homestead to John C. Rowe.

W. C. Moss, $2 ;  C. M. McMichael, $2 ;  W. H. Smith, $2 ; oath, seventy-five cents; survey, $7; total, $13.

N. A. Bull was one of the plaintiffs in the case of Case & Bull *v.* Rowe, referred to in the statement contained in the opinion of the court.

This land was levied on by the sheriff in the Watt case, January 27th, 1877, and sold April 2d, 1877, for $675, to N. A. Bull. The other facts of the case are stated in the opinion.

The Circuit judge charged the jury that, originally, this claim of homestead was invalid as against the Watt judgment, which was based upon a contract made prior to 1868; and that it was

invalid because Rowe did not reside on it; that the return, while indefinite, was made and filed in the clerk's office for record; that record was not necessary, but proper; that creditors may attack the return within a reasonable time, although no time is fixed; that while the return was indefinite, still, as the land was surveyed, and notice given at the sale of the assignment of the homestead, the return could not be held void for want of definiteness; that creditors thus had notice; and the only way the assignment could be vacated was by direct proceedings attacking the return, and could not be avoided in a proceeding by a purchaser at sheriff's sale to recover the land; that the verdict should be for the defendant, and that the creditor, through whom Bull claims, was estopped by acquiescence.

To these instructions, the plaintiff excepted, and requested his Honor to charge, *inter alia,* as follows:

4. That the state constitution prescribes that the homestead consists of the " dwelling-house, out-buildings and lands appurtenant," and that lands not appurtenant to the dwelling-house are not included. And that a homestead, as against debts existing prior to the adoption of the constitution of South Carolina, is not only voidable, but utterly void.

5. That the lapse of time and *laches* of plaintiff cannot operate to make that valid which was void *ab initio.*

6. That the defendant derives his title either under the assignment or by possession; that the assignment is void *ab initio,* and that it requires ten years' possession to give him title.

7. That the assignment and return should have been recorded in the clerk of the court's office.

8. That the assignment and return is void from uncertainty and obscurity!

Upon these requests the court charged as follows:

" As to the fifth request, I charge you that the lapse of time and *laches* of the plaintiff cannot operate to make that valid which was void *ab initio,* but may operate to make that a title which otherwise could not have been a title."

" As to the sixth request, I cannot so charge, but hold that by failing to avail himself of the method pointed out by statute, to set aside the admeasurement of homestead, the plaintiff has lost

the rights which he otherwise would have had under the constitution of the United States, as well as the constitution of South Carolina."

"Upon the seventh request, ' that the assignment and return should have been recorded in the office of the clerk of the court,' I hold that when the return was filed for recording in the court, it was the beginning of notice."

"As to the eighth request, ' that the assignment and return is void from uncertainty and obscurity,' I charge you that the return is very unsatisfactory and quite indefinite ; but under the evidence, and in view of the fact that express notice was given on the day of the sale, I hold that it was sufficient."

To all of which the plaintiff excepted.

The defendant's counsel then requested the court to charge the jury as follows :

1. "That in order to make out a title to land purchased at sheriff's sale, the judgment and execution under which the sale was made must be produced ; and in order to prove a judgment obtained under the summary process practice, it was not only necessary to produce the entry of the presiding judge on the docket, but the original entry of the decree in the book containing the minutes of the court; and this proof not having been made, the plaintiff has not made out his title, and the verdict of the jury must be for the defendants."

Upon this request the judge charged as follows : " Such, gentlemen of the jury, is the ordinary rule and requirement of law ; but in this case there was sufficient evidence of the judgment upon which the execution was issued to sustain the sale therein and the title of the purchaser."

2. "That if the jury believe, from the evidence, that the execution in the case of Sarah R. Watt v. John C. Rowe was never returned by the sheriff to the clerk for renewal or otherwise, the subsequent proceedings for the renewal of the said execution were irregular and void ; and the sale made under the renewal execution in said case, of the defendant's homestead, was therefore void, and the jury should find for the defendant."

Upon this request the court charged as follows : " That proposition embraces a correct rule of practice ; but the fact that

the return of the execution to the clerk's office may be proved by evidence other than an endorsement on the execution, the proceedings for the renewal of the execution and the entries upon the dockets and minutes of the court raise the presumption that it was returned to the clerk's office before the second execution was issued."

Defendant's counsel excepted to the charge of the court as to each of these requests.

Verdict for defendant. Plaintiff appealed.

*Messrs. W. J. DeTreville* and *S. Dibble*, for appellant.

*Mr. J. F. Izlar*, contra.

Plaintiff must recover on stength of his own title. 1 *Tread.* 90. The judgment is a part of the title. 1 *McM.* 377; 1 *N. & McC.* 408; 2 *Ib.* 417. A decree in summary process may be shown only from the entry in the minutes of the clerk. 1 *McM.* 493; 2 *Mills' Const. R.* 247; 2 *Spears* 311.

There could be no proceedings to waive the Watt judgment until the original *fi. fa.* was returned to the clerk's office.

The homestead in this case was set off under act of 1868. 14 *Stat.* 19. No complaint was then made, although the present plaintiff was then a judgment creditor of Rowe. Being set off, and the assignment returned for record, the homestead cannot be subjected to further proceedings until so permitted by the court under whose process it was set off. 46 *N. H.* 363; 12 *Ohio* 431; 5 *S. C.* 75. It was a judgment, and must stand. *Thomp. on Home.*, § 667 *and notes.* The judgment creditor is estopped. 54 *N. H.* 128. So are all judgment creditors then holding liens.

As a judgment, it is binding upon all who could have resisted it. *Herm. on Estoppel* 165; 1 *Johns. Ch.* 436; 2 *Spear.* 620; 2 *Rich.* 560; 13 *Iowa* 549; 14 *Ib.* 320; 7 *S. C.* 148, 172. The plaintiff here was then a judgment creditor; and therefore he is bound.

The right of homestead is a good defence in ejectment. *Thomp. on Home.*, § 686.

April 20th, 1880. The opinion of the court was delivered by McGowan, A. J. On January 30th, 1869, Sarah Watt obtained judgment in the *Summary Process* jurisdiction of the court for Orangeburg county against John C. Rowe on a cause of action arising on a contract made before the adoption of the constitution of 1868. Under this decree execution was issued, which subsequently lost its active energy and was renewed by *scire facias* by order of Judge Reed, October 18th, 1876. A second execution was issued thereon under which the plaintiff levied upon a tract of land of five hundred acres on "Snake Swamp," fifteen miles from Orangeburg, as the property of Rowe, the defendant in execution, and had the same sold by the sheriff. At this sale the land was purhased by Norman A. Bull, the appellant, who received sheriff's title for the same, and he brings this action to recover the land from the said Rowe and his tenants in possession.

At this sheriff's sale Rowe had public notice given that he claimed the land as his "homestead" which had been assigned to him under the constitution and laws of this state. In the trial of the case that was his principal defence and the following facts were disclosed:

There were other judgments in the sheriff's office against Rowe, but it will not be necessary to refer to more than three of them. That of J. M. Copes for $501.91, entered February 13th, 1867, and that of F. M. Rogers for $2812.31, by confession, and entered March 20th, 1867, and that of Case & Bull for $322.72, entered March 22d, 1867. The execution of Copes was levied, and on January 27th, 1869, three days before Sarah Watt obtained her decree, appraisers, appointed for the purpose, signed the paper which is printed in the brief, setting off to Rowe, as his homestead, the five hundred acres of land now sued for. The return was not marked, filed or recorded until March 12th, 1877, and had, probably, been in the record in the case of Copes for most of the intervening time. When it was placed on the record does not appear. Briggs, who was sheriff at the time, says: "I kept it for a while, and then I think I returned it to the sheriff's office for recording." The land assigned as homestead was not sold at that time (afterwards,

as above-stated,) but the remainder of his lands were sold and applied to executions according to their priorties, and for what remained unpaid, the executions were returned "*nulla bona.*" Livingston, who was sheriff when the five hundred acres were sold in 1877, also applied the proceeds to executions in his office according to their priorities. That of Case & Bull received its "*pro rata,*" but it does not appear that the proceeds of either sale reached the case of Sarah Watt.

Upon these facts the case was submitted to the jury, who, under the direction of the judge, found a verdict for the defendant. The judge was requested by the counsel on both sides to charge certain propositions of law, which he did, and the case comes up on exceptions to his rulings.

We will first dispose of the exceptions of the defendant. His first exception was, " that in order to make out a title to land purchased at sheriff's sale, the judgment and execution under which the sale was made must be produced ; and in order to prove a judgment obtained under summary process, it was not only necessary to produce the entry of the presiding judge on the docket, but the original entry of the decree *in the book containing the minutes of the court;* and this proof not having been made, the plaintiff has not made out his title and the verdict of the jury must be for the defendant." Upon which the judge charged " that in this case there was sufficient evidence of the judgment upon which the execution issued to sustain the sale."

We find no error in this charge. No separate judgment could be produced for the reason that the decree was rendered in a *Summary Process,* in which no formal judgment was required by law. The original entry of the decree on the docket in the handwriting of the judge who rendered it, and the fact that the execution had been renewed against the defendant without objection, was sufficient. *Douglass* v. *Owens,* 5 *Rich.* 534.

Defendant's second exception was " that if the jury believe, from the evidence, that the execution in the case of Sarah R. Watt *v.* John C. Rowe was never returned by the sheriff to the clerk for renewal or otherwise, the subsequent proceedings for the renewal of the said execution were irregular and void ; and the sale made under the renewed execution in said case of the

defendant's homestead was therefore, void, and the jury should find for the defendant." We find no error here. The defendant was estopped by the proceedings for the renewal of the execution. *Herman's Law of Estoppel* 191 ; *Jackson* v. *Patrick,* 10 *S. C.* 197.

That brings us to the defence of Rowe and the exceptions of the plaintiff. These may be considered as condensed into the third and fifth. The third exception is "that the constitutional provisions and the statutes of this state as to homestead are void as to contracts pre-existing before April 15th, 1868." The fifth exception is, " that the lapse of time and *laches* of plaintiff cannot operate to make that valid which was void *ab initio.*"

Several cases involving the same or kindred questions are now before the court, and for that reason, and because we are desirous of supporting the provision for homestead, especially as to old debts, if it can be done properly, we have considered this case with care and have gone more fully into the reasons for the opinion than otherwise would have been necessary.

The homestead exemption is of modern origin and exclusively American. Most of the states of the Union have adopted homestead laws since 1839, when Texas, then a young republic inviting settlement, led the way. These laws in no two states are in all respects the same. The difference in these enactments has prduced want of symmetry in the decisions, but the leading idea in most of them is that the right of homestead in the debtor is neither a lien, encumbrance nor an estate, but *a negation* of the ordinary remedies of the creditors as to certain property for certain purposes—an "exemption," dealing merely with the means of enforcing the contract and leaving the title of the property untouched.

Several irregularities were alleged against the claim of the homestead in this case, growing out of the details of this proceeding ; as, for instance, that the land assigned was not "the family homestead of the defendant," who never lived on it, but miles away at Orangeburg ; that " the return " of the appraisers is without plat or metes and bounds, and is too vague ; that it was never " returned for record " until the levy under which the land was sold by the sheriff, &c. ; but we do not think it neces-

sary to consider these points and give no judgment upon them. The main question is, whether the plaintiff is barred of his recovery of the land sued for by the homestead claim of the defendant.

The plaintiff purchased under the execution of Sarah Watt, and the sheriff's deed conveyed to him all her rights. In this action for the land the inquiry is narrowed down to the simple question, whether Sarah Watt was barred by the assignment, either under the law at the time of the assignment, or by lapse of time, or by any subsequent acts of her own up to the day of sale. We will endeavor to keep these points from running into each other, and consider first the rights of the parties as they stood under the law on the day of assignment, reserving for consideration hereafter the alleged effect of the acts of the plaintiff in execution.

The constitution (*Art. II.,* § 32,) declares "the family homestead of the head of each family residing in this state, such homestead consisting of dwelling-house, out buildings, and lands appurtenant, not to exceed the value of $1000, and yearly product thereof, shall be exempt from attachment, levy or sale, on any mesne or final process issued from any court. * * * Provided, that no property shall be exempt from attachment, levy or sale for the payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon. * * * It shall be the duty of the general assembly, at their first session, to enforce the provisions of this section by suitable legislation."

In 1868 the general assembly passed "An act to determine and perpetuate the homestead," which provided that "the sheriff or other officer executing said process shall cause a homestead, such as said person may select, not to exceed the value of $1000, to be set off to said person in the manner following, to wit: He shall cause three appraisers to be appointed, one to be named by the creditor, one by the debtor, and one by himself, who shall be discreet and disinterested men, resident in the county, and shall be sworn by a justice of the peace to impartially appraise and set off by metes and bounds a homestead of the estate of the debtor, such as he may select, not to exceed the value of $1000;

and the said appraisers shall proceed accordingly to set out the homestead, and the set-off and the assignment so made by the appraisers shall be returned by the officer along with said process for record in court; and if no complaint shall be made by either party, no further proceedings shall be had against the homestead, but the residue of the lands and tenements of the head of the family, if any more or other he shall have, shall be liable to attachment, levy and sale; provided, that upon good cause shown, the court, out of which the process issued, may order a re-appraisement and re-assignment of the homestead, either by the same appraisers or others appointed by the court; and provided further, that should the creditors or debtor neglect or refuse, after due notice from the officer executing the process, to nominate an appraiser, the said officer shall appoint the same." 14 *Stat.* 19.

In 1869 the general assembly passed " An act to punish sheriffs and other officers for violating the homestead." 14 *Stat.* 172.

In 1872 was passed the " Act to reduce all acts and parts of acts to determine and perpetuate the homestead into one act, and to amend the same," which, as to the manner of laying off homestead, changes the law of 1868 only in allowing for complaint " *thirty days* after return for a record in court." 15 *Stat.* 229.

In 1873 was passed an " Act to revise and amend the homestead law," which substantially re-enacted the act of 1872 as to the manner of laying off homestead, only adding that the return should be made by the appraisers " *within ten days after the assignment and set-off is made.*" 15 *Stat.* 369.

These are the provisions of our constitution and laws upon the subject of homestead. They were firmly enforced according to their terms by this court, as appears from the cases *In re Kennedy,* 2 *S. C.* 216, and *House* v. *House,* 2 *S. C.* 229. But in December, 1872, the Supreme Court of the United States, in the case of *Gunn* v. *Barry,* 15 *Wall.* 610, held that so much of the constitution of the State of Georgia as gave a homestead exemption against debts in existence at the time of its adoption, was void. The judgment declares that the legal remedies for " the enforcement of a contract which belong to it at the time and place where it is made, are a part of its obligation. A state may

change them, *provided* the change involves no impairment of a substantial right. If the provision of the constitution or the legislative act of a state fall within the category last-mentioned, they are to that extent utterly void. They are for all the purposes of the contract which they impair as if they had never existed."

This is undoubtedly the law, and our courts, conforming their decisions to the principles announced in that case, have decided that so much of our constitution and laws as purport to allow a homestead against a debt older than the constitution, are in violation of the constitution of the United States and void. *Cochran* v. *Darcy*, 5 *S. C.* 125; *Ex parte Hewett*, 5 *S. C.* 409.

This created a new state of affairs, and the difficult duty is devolved upon the court of deciding the rights of parties according to principles not in the minds of those who made the laws, and which, of course, contain no provision applicable to the case.

Although it was not known at the time Rowe's homestead was set off in 1869, the same principles were applicable then which have been since declared. If the question of assigning the homestead in this case were before us to-day, it is clear that it could not be allowed. *De La Howe* v. *Harper*, 5 *S. C.* 470. In conformity with these latter cases and the principle on which they are founded, we are bound to interpret the constitution and laws as if the provision for allowing homestead exemption against debts then in existence *were spunged out, and in place thereof another exception embracing such debts* were added to the *proviso*, which declares " that no property shall be exempt from levy and sale for taxes, or for payment of obligations contracted for the purchase of said homestead," &c. Judge Cooley lays it down in his Constitutional Limitations, p. 188, " that if an act is unconstitutional *in part*, it is to be construed as if the unconstitutional part were expressly excepted." We are therefore constrained to hold that the assignment of homestead to Rowe in 1869 was unauthorized as to the debt of Sarah Watt, which must be considered as excepted and beyond the jurisdiction to assign homestead, and such assignment as to her debt *was absolutely void*.

If the assignment as to the debt of Sarah Watt was void on

the day it was made, were the relative rights of the parties different the next day or the next month? Did the fact of assignment itself, apart from any alleged effect of acquiescence on her part, in any way change those rights? The circumstances of the case may suggest some vague idea of *res adjudicata.* As the debtor has the right to but one homestead while he may have many debts, and as it would be unreasonable to require him to have his homestead laid off as many times as he has his creditors, an impression is apt to arise that the assignment is, in some way, a proceeding *in rem,* or of administration, and that, when made, it must be regarded as done once for all, and that every creditor is somehow bound thereby. The principles of *res adjudicata* are very extensive and effective. The judgment of a court of competent jurisdiction embraces all parties, whether they choose to be heard or not, and is conclusive until reversed on appeal, whether the decision be right or wrong. But it pre-supposes a *tribunal and jurisdiction* of the subject matter, and it is indispensable that there should be parties notified who have the right to be heard. No element of the principle of *res adjudicata* appears in this proceeding. Sarah Watt had not obtained judgment when the assignment was made, and she was not before the persons who assigned the homestead. The act of 1868 provides no tribunal to decide the question of right of homestead, for the obvious reason that, according to the view upon which the act proceeded, there was no right to decide. The exemption was allowed against all claims whatever, except for taxes and the purchase money of the homestead, and as to these it did provide the means to decide the right in the section which requires the court to certify thereon the consideration for which it was rendered. We suppose that no homestead could stand which was assigned against a process which had endorsed on it the certificate that the consideration was for the purchase money of the homestead. The process of Sarah Watt had not on it the judicial certificate that her debt originated *before* the constitution—only for the reason that the law, proceeding on another view, had made no provision for that case. We think that a careful reading of the act will show that it never contemplated any such issue; it provides no tribunal, no judge, for no case and no notice

to the parties.  We are not informed whether the practice is to notify other judgment creditors.  It is not necessary that any one should know of the assignment but the levying creditor, the sheriff and the appraisers, who are commanded to do, certain acts specifically prescribed.  The act does direct that the assignment shall be " returned for record in court, and if no complaint shall be made by either party, no further proceeding shall be had against the homestead."  This manifestly means the parties to the proceeding, viz., the acting creditor and the claimant, for the words are " *either party*," and the *proviso* is, " that upon good cause shown, the court, out of which the process issued, may *order a re-appraisement and re-assignment of the homestead, either by the same appraisers or others appointed by the court.*"  Complaint could reach no further than that.  The act cannot fairly be construed to provide a means for the determination of rights which, by its terms, did not exist—the right in question was declared after the act was passed and in direct opposition to its terms, spirit and intent.  The question of right was never submitted to a tribunal before which Sarah Watt was a party, in such a way as to impose upon her the consequences of failing to appear, or the duty of lodging a " complaint " for the purpose merely of a " *re-assignment.*"  The assignment was not recorded; it was only found after a search filed in the clerk's office with the records.  We are obliged to say Sarah Watt's rights were never adjudicated, and she should not be bound by the *ex parte* ministerial proceedings under which Rowe's homestead was laid off, which did not and could not embrace her debt.  No person can be made a party in a case except by process of law or by his own consent.  *Story's Eq. Pl.*, § 207–8 ; *Marshall* v. *Drayton*, 2 *N. & McC.* 26 ; *Williams* v. *Von Valkenburg*, 16 *How. Pr.* 144 ; *Buckly* v. *Buckly*, 6 *Abb.* 307 ; *Booden* v. *Fitch*, 15 *Johns.* 220 ; *Sollee* v. *Croft*, 7 *Rich. Eq.* 43.

The law upon this subject is condensed by " Thompson on Homestead and Exemptions," Section 230, as follows :  " It is scarcely necessary to state, as a general rule, that a dedication of homestead, in whatever form, does not have the effect of withdrawing it from liability on account of any pre-existing debt, liens, conveyances or charges which otherwise would have bound

the land;" and again, Section 291 : "Every debt created by contract prior to the passage of any homestead or exemption law, is *privileged* from the operation of such law. To this rule, as the writer understands it, the court can now admit no exceptions." It is said in *Newton* v. *Summey, 59 Ga.* 399: "It has been often ruled by this court, in effect, that in the assignment of a homestead there is no magic by which superior liens can be thrown off or deficient titles made perfect. Those whose claims outrank the constitution, may stay out of the Ordinary's Court, and nothing there done will be in their way." [In Georgia, homestead is assigned in Ordinary's Court.]

After the assignment there may be a presumption that it is valid. This, however, does not make it "voidable," good until set aside by a direct proceeding for that purpose, but good until the important fact is shown. As soon as it appears that there was *a privileged debt,* the "*prima facie*" is removed, and the whole proceeding *quo ad hoc* is void. This fact may appear in any proceeding, direct or collateral, for what is absolutely void may be disregarded as nullity whenever and wherever it is encountered. *Hill* v. *Robertson,* 1 *Strob.* 1 ; *Singleterry* v. *Carter,* 1 *Bail.* 467 ; *Williamson* v. *Farrow,* 1 *Bail.* 611 ; *Thompson* v. *Tolmie,* 2 *Pet.* 169 ; 1 *Tidd's Pr.* 937.

We see no reason why Bull, the purchaser, may not maintain his direct action for the land. Our court has held that when the assignment of homestead has not been "returned for record in court," under the act of 1868, it is not exempt from levy and sale, and the purchaser at sheriff's sale may disregard it and recover the land from the defendant in execution notwithstanding his claim of homestead. *Ryan* v. *Pettigrew,* 7 *S. C.* 146 ; *Choice* v. *Charles,* 7 *S. C.* 171. This case is much stronger, for here, as to this creditor, the whole proceeding is void.

It may seem that this view is in conflict with the case of *McKeown* v. *Carrol,* 5 *S. C.* 75, but if that case is carefully examined it will be found that the point decided is not inconsistent with what is here declared to be the law. In that case the creditor had a judgment older than the constitution. Homestead was allowed and he did not complain but levied and sold what he assumed to be *the remainder in the property* assigned as

homestead.   At that sale McKeown purchased and took sheriff's deed, *reciting the homestead,* sale of the remainder and purchase by him.    Claiming to be remainderman under this deed, he instituted proceedings against those in possession for an order to restrain them from committing waste.   The application was refused.   The purchaser had no higher right than the plaintiff in execution under which homestead had been assigned and which was acknowledged in his deed and title taken subject to it.   The case turned upon the force of the word "*exempt,*" and without regard to the doctrine and dicta of the case, the ruling was right; as stated in the judgment of the court, "the plaintiff did not put himself in a proper position to question the nature of the defendant's right of possession."

Assuming that defendant Rowe had no right to homestead as against the debt of Sarah Watt, and that the mere ministerial act of assignment gave no additional rights and was void as to her, does the evidence show that she did or omitted to do anything to bar her right to proceed against the land ?   The doctrine of estoppel applies to constitutional as well as other rights and to proceedings absolutely void as well as those merely voidable.   The assignment as a fact was made.   Rowe retained possesssion of the land assigned while his other property was sold to pay his debts.   Sarah Watt was probably aware of this assertion of claim adverse to her right, and she took no step to controvert it from 1869 until 1877.   Should this non-action enure to the benefit of the defendant and now estop her or her alienee ?   The law does not require one to contest for his rights, but if he omits to do so for a certain time, it imposes the penalty, in the form of the statute of limitations, of withholding the means of enforcing them.   The statute of limitations is not pleaded and does not apply here.   But without reference to the statute, one may undoubtedly waive his rights either by voluntarily yielding them or by doing certain acts which will be held, by force of law, to have that effect.

It is not easy to lay down any general rule as to what acts shall constitute a waiver.   That must depend largely upon the circumstances of each particular case.   There are, however, principles upon which estoppels proceed.   The doctrine is not

2 A

shifting and uncertain according to the caprice of the judge, but rests upon well-defined and fixed rules. Thus understood estoppels no longer deserve the epithet of "odious" but are most useful agencies in the administration of justice. As we understand it, estoppel by conduct is where one party has been induced by the conduct of the other to do or forbear doing something which he would not or would have done but for such conduct of the other party. *Bigelow on Estoppel* 480. The conduct which is claimed to operate as an estoppel must have induced action, the disavowal of which would be inequitable, and which, therefore, the party who holds out the inducements is estopped from disavowing. There is no estoppel without fault to the injury of another. There was, in this case certainly, no intentional waiver on the part of Sarah Watt, for that would imply knowledge of the existence of her right, which she did not have. Was there anything done or omitted which would estop her? Can we say the assignment of homestead or anything connected with it was induced by the conduct of Sarah Watt, either by concealment, silence, non-action, acquiescence or declarations? She did not take any part in the assignment of homestead, for she then did not have judgment. The whole proceedings as to her was "*per force.*" She made no misrepresentations which it is now inequitable to disregard; and so far as we can see, she did not say or do anything in reference to the matter, but was simply silent and inactive. She held no relation of trust to Rowe which made it her duty to speak or act, and she therefore had the right without injury to him and without fraud to be silent and inactive. All that can be said is, that she did not disturb the proceeding for a time, during which Rowe enjoyed the homestead, and of this, certainly, he has no right to complain. This delay was probably induced by ignorance of her rights, and was, therefore, without one of the indispensible ingredients of *laches—willful negligence.* As was said by Judge McIver, in the case of the *State* v. *Moseley*, 10 *S. C.* 1: "Though that act, having been decided to be unconstitutional, cannot be regarded as ever having had any *legal force* or effect, yet in questions involving *good faith* or *laches*, it may perhaps be worthy of consideration that such a

law was not only spread upon the statute book, but was universally acquiesced in until the question of its constitutionality was decided." But be that as it may, we cannot resist the conclusion that the mere non-action of Sarah Watt for a period short of the time necessary to bar her right to levy and sell was not a waiver of her rights, and should not estop her or the purchaser at sheriff's sale.

There should be a new trial, and it is so ordered.

WILLARD, C. J., and McIVER, A. J., concurred.